511 A.2d 847

**Annie P. NIXON**

v.

**Earl S. NIXON, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1985.

Filed June 13, 1986.

Claire D. Newman, Philadelphia, for appellant.

William F. Coyle, Philadelphia, for appellee.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

POPOVICH, Judge:

This is an appeal from an order of the trial court in this paternity and support action after we remanded the matter for filing of exceptions *nunc pro tunc. Commonwealth ex rel. Nixon v. Nixon,* 312 Pa.Super. 313, 458 A.2d 976 (1983). We must reverse and remand for the reasons herein stated.

The facts in this case were set forth by the trial court in the following manner:

Appellee, Annie Nixon, and appellant, Earl Nixon, Sr., were married in Philadelphia, Pennsylvania, on December 2, 1953. On October 20, 1953, Earl Nixon, Jr. was born of this marriage. The parties separated in 1957, and Earl Jr. was in the custody of his mother. In 1959, appellee was informed by her son's doctors that the child had tuberculosis. The doctors also recommended that the child move to a warmer climate for health reasons. Mrs. Nixon moved with the child to Texas while Mr. Nixon remained in Philadelphia. Before she left Philadelphia, Mr. Nixon was ordered to pay thirty dollars ($30.00) per week to his wife for her support and that of their son by the Court of Common Pleas of Philadelphia County.

In March of 1967, appellee gave birth to another son, Paul Vance, in Houston, Texas. In September, 1977, appellee filed a petition seeking increased support for herself and for Paul Vance. She also petitioned the court to attach appellant's wages and to reduce substantial arrearages to judgment. Hearings were held and the parties agreed to submit to blood tests in order to determine Paul's paternity. Additional hearings were conducted and the trial court ordered appellant to make payments in the total amount of sixty-five dollars ($65.00) per week, with forty-five dollars ($45.00) allocated for the support of the son and twenty dollars ($20.00) allocated for the support of the wife. The court also granted appellant a credit on arrearages in the amount of $3,235.00. An appeal was launched to this Court (Nixon I) and the matter was remanded. Because appellant has filed exceptions *nunc pro tunc,* the appeal is now

properly before this Court.[1] We must reverse and remand because the record is defective and also shows that the trial court failed to consider the statutory guidelines.

When a child is born during wedlock, there arises a strong presumption of legitimacy. *Connell v. Connell,* 329 Pa.Super. 1, 6, 477 A.2d 872, 875 (1984).

The "Uniform Act on Blood Test to Determine Paternity"[2] states that the presumption of legitimacy is overcome under the following circumstances:

The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child. 42 Pa.C.S.A. § 6137.

Additionally, we recognize the following effects of the blood test results:

If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. 42 Pa.C.S.A. § 6136.

In this case, the trial court took testimony on the issues of paternity, support and arrearages and concluded that the blood test which excluded appellant as the father "was subject to several types of error [sic] which can result in false exclusionary findings." Trial Court Opinion at 10. The trial court also found that the presumption of legitimacy during wedlock was not rebutted because the "putative father is estopped from denying paternity because he has indicated by his conduct that the child is his own." Simply stated, the trial court applied the doctrine of equitable estoppel which has been described in the following manner:

equitable estoppel, reduced to its essence, is a doctrine of fundamental fairness designed to preclude a party from

1. On January 31, 1986, judgment was entered.
2. The Act of July 9, 1976, P.L. 586, No. 142, § 2.

depriving another of a reasonable expectation when the party inducing the expectation albeit gratuitously knew or should have known that the other would rely upon that conduct to his or her detriment.

*Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416, 418 (1976). In the instant case, the doctrine of equitable estoppel has been applied to establish effectively as a matter of law that appellant is the father.[3]

However, this doctrine normally has been invoked when the child has been born not only during wedlock but during cohabitation on the theory that

[t]here is something inherently repulsive about a man questioning the paternity of children who were conceived by his wife and born to her while he was living with her and who were accepted and held out to the world by him as his children until his and his wife's personal differences led to a support action.

*Commonwealth ex rel. Weston v. Weston,* 201 Pa.Super. 554, 556, 193 A.2d 782, 783 (1963). *Accord Chrzanowski v. Chrzanowski,* 325 Pa.Super. 298, 472 A.2d 1128 (1984).

■ In the instant case, the evidence is undisputed that Paul was conceived after the parties had separated. The evidence also is undisputed that the parties remained separated from the time that appellee moved to Texas and had not lived together since that time.

3. Although appellant introduced the blood tests in order to disprove paternity, we note that one former member of this Court had suggested that a prescriptive period is necessary "in which a putative father who denies paternity must commence suit." *Id.* at 313, 369 A.2d at 419, Concurring Opinion by Spaeth, J. Judge Spaeth stated:

In this regard it is instructive to note that the Uniform Parentage Act of 1973, which has been adopted in three jurisdictions, recommends that a putative father who elects to bring an action for the purpose of establishing the non-existence of the father-child relationship must bring the action "within a reasonable time after obtaining knowledge of relevant facts, but in no event later than [five] years after the child's birth." Uniform Parentage Act (9 U.L.A.) § 6(a)(2).

*Id.*

To date, however, this Court has not adopted the Uniform Parentage Act of 1973.

Under these circumstances, we must disagree with the trial court when it concluded that the "estoppel doctrine set forth above is again controlling."[4] Trial Court's Opinion at 13.

Because the record also contains other defects, we must remand.

The trial court also entered the following findings:

Only evidence of overwhelming weight will be held sufficient to rebut the presumption of legitimacy. *Burston v. Dodson*, 257 Pa.Super. [1] 390 A.2d 216 (1978). *It is well-settled law in Pennsylvania that the presumption can only be overcome by proof of facts establishing non-access, or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible for the child to have been conceived in light of the date of birth.* It is not necessary that the possibility of access be completely excluded. *Commonwealth ex rel. Ermel v. Ermel*, 259 Pa.Super. 219, 393 A.2d 796 (1978).

The record establishes that Paul Vance Nixon was conceived and born during the marriage. Petitioner [appellee] and Respondent [appellant] are, in fact, still married and neither party has even instituted an action for divorce. Although they have lived separately for many years, and Paul was conceived after the parties had separated, there is no evidence on the record of Earl Nixon's nonaccess during that critical time. On the contrary, Mr. Nixon admitted that he had paid for his wife to fly to Philadelphia approximately nine months before the date of Paul's birth and that he had then visited with her at the home of her aunt in West Philadelphia, where she stayed for several weeks before returning to Houston. Finally, there is no evidence that Respondent was ever

4. We also have recognized that "the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence." *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 436, 457 A.2d 502, 504 (1983) (quoting *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975)).

impotent. Taken together, the facts fall clearly short of overcoming and rebutting the presumption of legitimacy despite Respondent's testimony contradicting that of his wife, that there had been no sexual intercourse between the parties during the period of conception. *That there was far more than a mere possibility of access is not in dispute.* It was Respondent's own testimony that he had visited with his wife on a number of occasions at the home of her aunt during the spring, 1967, visit for which he had paid the transportation costs. Trial Court's Opinion at 13–14. (Emphasis added).

■ At this point, we need only reiterate that the trial court's statement that the "presumption [of legitimacy] can *only* be overcome by proof of facts establishing non-access....",[5] is an incorrect statement of the law. *See* Section 6137 (the presumption of legitimacy can be rebutted "if the tests show that the husband is *not* the father of the child.") (Emphasis added)[6]

■ Additionally, we note that even under the trial court's statement of the law, the factual findings were incorrect. The following portions of the record establish that the testimony of access *was* in dispute although appellant admitted visiting Philadelphia *after* Paul's birth:

Q. Now, Mrs. Nixon and you separated sometime in 1959?

A. '57.

Q. '57. After you separated, were there any occasions when you had sexual relations with Mrs. Nixon?

5. Trial Court Opinion at 13. (Emphasis added). We also note that the law distinguishes between those situations in which blood test results are admitted to disprove paternity and those situations in which blood test results are admitted to prove paternity affirmatively. *Turek v. Hardy,* 312 Pa.Super. 158 n. 6, 458 A.2d 562, 565 n. 6 (1983) ("42 Pa.C.S.A. § 6136 which provides that if all experts agree that blood tests *exclude* a defendant as a possible father, the question of paternity is to be resolved accordingly. Absent a legislatively enacted provision making positive blood tests also conclusive, we must view them as only part of the evidence.") (Emphasis in original).

6. In the instant case, both parties stipulated to the expert's findings. *Compare* Section 6134 ("The experts shall be called *by the court* as witnesses") (emphasis added).

A.   None.

Q.   Have you had sexual relations with her since December of 1967 up to the present?

A.   Never.

Q.   Have you ever visited her in Houston, Texas?

A.   No, I have never been there.

Q.   You've never been to Houston, Texas?

A.   No.

Q.   You mentioned some occasions when Mrs. Nixon came to Philadelphia *with Paul.*

A.   Yes.

Q.   Would you tell me where the visits were.

A.   Well, she was staying at her aunt's house in West Philadelphia.

Q.   How long did each of the visits last?

A.   I went by to see them, stayed there for maybe about an hour, something like that.   Vol. I at 63–64.   (Emphasis added)

Because the testimony of access was in dispute, the trial court's findings of fact were in error.   In view of our disposition of this case, we need not address the other issues raised.[7]

Judgment is reversed and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

MONTEMURO, J., files a dissenting opinion.

---

7.   The Dissenting Opinion of Montemuro, J. relies on *Chrzanowski v. Chrzanowski, supra,* for support of its view that the blood tests have no relevance in this case.   However, in *Chrzanowski,* the issue presented was whether an adjudication of paternity which was made in a state court in Virginia was entitled to full faith and credit in this jurisdiction.   This Court answered in the affirmative and also stated that the father had lived with the mother continuously for three years *after* the child was born, had supported the child, and also held the child out as his own.   In this case, the full faith and credit clause is inapplicable.   Additionally, appellant and the appellee had separated ten years before the child was born and remained apart after the separation.

240

MONTEMURO, Judge, dissenting:

I strongly dissent. The crux of this case is whether the provisions of the Uniform Act on Blood Tests to Determine Paternity takes precedence over the equitable considerations implicated by appellant's repudiation of Paul Vance Nixon as his child. I am unpersuaded by the reasoning for the majority's affirmative answer. Rather,

> equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which/leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.

*Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503 (1983). The fact that the injured party is a child renders the application of this principle well nigh obligatory.

> Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized.

*Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976).

My position, simply stated, is that given the numerous instances in which appellant has held Paul out as his son, the results of the blood tests have no relevance. While the majority finds that equitable estoppel is "normally" applied only where access is not problematical, the putative father in *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984), was held responsible for the child although lack of access to the mother was stipulated, and both the mother's testimony and blood tests were conclusively negative on the subject of his biological involvement in the child's existence. In that case we held that, "parental relationships can be established constructively and that such relationships and their concomitant duties merit judicial recognition and enforcement." *Id.*, 325 Pa.Superior Ct. at 306, 472 A.2d 1132.

Responsibility toward a family, not withstanding the geographical remove, is not a sometime thing to be undertaken

or renounced at the convenience of the putative parent. The majority's adoption of a better late than never theory with regard to the child's support, and indeed to his origins, is truly the exaltation of form over substance, and completely disregards our mandate to do substantial justice. I would affirm.