594 A.2d 660

**Gwyn A. Faggart FAUST**

v.

**Brian K. FAGGART, Appellant.**

Superior Court of Pennsylvania.

Argued March 7, 1991.

Filed July 9, 1991.

Petition for Allowance of Appeal Denied Nov. 25, 1991.

John W. Metzger, Lancaster, for appellant.

Nina B. Shapiro, Asst. Dist. Atty., Lancaster, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

BECK, Judge:

This case raises a crucial issue concerning the use of blood tests in rebutting the presumption that a child born to a married woman is the child of the marriage or, as it was formerly known, the presumption of legitimacy.[1]

As is most often the case, the context in which this issue is raised is a support action by the mother, appellee Gwyn Faust, against the alleged father, appellant Brian Faggart. The mother and alleged father were married in either 1982 or mid-1983.[2] They separated in October 1983. Shortly thereafter, the alleged father joined the Navy and went to California. In August of 1984, mother flew to Chicago to meet the alleged father. Both parties testified that they engaged in sexual intercourse at that time. Mother delivered the child, Anthony, on March 31, 1985. She testified that the child was born two months premature. In December 1985, the parties were divorced.

Mother initiated this support action by complaint filed December 6, 1989. A support conference was held on March 8, 1990. Since the alleged father denied paternity, no agreement regarding support could be reached and the Domestic Relations Hearing Officer entered a Recommendation for Support Order in the amount of $75.00 per week.

1. In *John M. v. Paula T.*, 524 Pa. 306, 314, n. 2, 571 A.2d 1380, 1383–84, n. 2 (1990), the Supreme Court directed that the phrase "presumption of legitimacy" no longer be used in our jurisprudence. In its place, the Court substituted the phrase " 'the presumption that a child born to a married woman is a child of the marriage,' and therefore of the woman's husband."

2. The record is unclear on this point. The mother testified that the parties married in 1983 whereas the trial court opinion states that they were married in 1982. The exact date of marriage is not relevant to our disposition of this case.

This recommendation was adopted by the trial court and entered as a temporary support order on March 13, 1990. The alleged father timely filed exceptions to the recommendation. He also simultaneously filed a petition to stay the temporary order and a separate petition requesting blood testing of himself, the mother and the child to determine paternity. These petitions were both denied by order dated May 1, 1990. No opinion in support of the denial was authored by the trial court.

On June 8, 1990, the trial court conducted a hearing on the alleged father's exceptions pursuant to Pennsylvania Rule of Civil Procedure 1910.11. At the hearing, all of the evidence presented related to the paternity of the child. As expressed by the trial court, the hearing was a limited one, addressing only whether the alleged father could rebut the presumption that the child was his since it was conceived and born during his marriage to mother. At the conclusion of the hearing the court held that the alleged father had not produced sufficient evidence to rebut the presumption and ordered the alleged father to pay support at the recommended level.[3]

Although the support order entered at the conclusion of the hearing was a final order, to which no post-trial motions may be filed, see Pa.R.C.P. 1910.11(k), the alleged father nevertheless filed a post-trial motion in which he renewed his claim that blood testing should be ordered to enable him to rebut the presumption that the child was his. The trial court promptly denied the motion and this timely appeal from the final order of support followed.

On appeal, appellant-alleged father does not argue that he succeeded in rebutting the presumption through evidence of non-access or impotency, as required by the common law. See *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951). Rather, appellant argues that he was prevented from ob-

---

3. The alleged father did not contest the level of support. He conceded that if he were found to be the child's father, $75.00 per week was a reasonable amount.

taining and submitting the best evidence available to him to rebut the presumption, namely, exclusionary blood test results. Appellant strenuously contends that he has a statutory right to obtain and employ such evidence under the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. §§ 6131–37 (1982) (the "Act"), *recodified at,* 23 Pa.C.S.A. § 5104 (1990).

Had this case arisen only a few years ago, the correct disposition of the issue presented would have been obvious. Under both the clear language of the Act and cases construing it, appellant would have been found to have a right to obtain blood tests of himself, the mother and the child and to use the results of those tests to attempt to rebut the presumption and avoid a support obligation. *Id.* § 6137; *Nixon v. Nixon,* 354 Pa.Super. 232, 511 A.2d 847 (1986); *Parenti v. Parenti,* 263 Pa.Super. 282, 397 A.2d 1210 (1979); *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962). It is only because of certain more recent developments in our case law that the issue posed has become more difficult to resolve. *See, e.g., Scott v. Mershon,* 394 Pa.Super. 411, 576 A.2d 67 (1990). Despite these more recent cases, however, we conclude that appellant was improperly denied the opportunity to obtain blood tests under the Act and that the trial court must, therefore, be reversed.

The right to obtain blood testing to determine paternity is provided by statute. Therefore, our task in this case is fundamentally statutory construction. The statutory language we must construe is as follows:

§ 6133. Authority for test

In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such

tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.

§ 6136.  Effect of test results

If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly.  If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

§ 6137.  Effect on presumption of legitimacy

The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child.

*Id.* §§ 6133, 6136–37.

We must determine whether this language provides the alleged father in this case the right to compel blood testing of himself, the mother and the child to enable him to rebut the presumption that the child is his.  Shortly after the enactment of the Act in 1961, this court was confronted with the selfsame question.  In *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962), a mother sought support for two children.  The alleged father was indisputably the mother's husband when the children were born.  The first child was conceived and born when the parties were still living together, whereas the second child was conceived and born after they had separated but were still married.  The alleged father denied paternity and sought blood tests to support his denial. Thus, the issue presented was precisely that presented in the instant case, i.e., may an alleged father who is sued for support compel blood testing to attempt to disprove that he

is the father of the child where the child was born during the alleged father's marriage to the mother? [4]

The *Goldman* court held that in such a case, the Act does provide a right to compel blood tests. The court focussed its attention on the sections of the Act quoted above. Initially, the court examined section 6133 and concluded that an action for support of a child born during wedlock was a proceeding in which paternity was a "relevant fact." Therefore, such an action satisfied the threshold requirement of section 6133. Although the court carved out an exception to this rule, finding that such an alleged father would be estopped from questioning paternity if he had held the child in question out as his own, the court did not find the estoppel exception applicable to the facts before it. *Id.*, 199 Pa.Superior Ct. at 277–78, 283, 184 A.2d at 352–53, 355.

More importantly for our purposes, however, is the *Goldman* court's construction of section 6137, addressing the use of blood test results to rebut the presumption that a child born during wedlock is the child of the marriage. As to this section, the court stated:

There is, of course, a strong presumption of legitimacy in Pennsylvania, but this presumption was held to be rebuttable even before the legislature provided so in § 5 [section 6137], supra. It has been deemed rebuttable by evidence of non-access or lack of sexual intercourse or impotency which is clear, direct, convincing and unanswerable. The legislature has now added another method of rebutting the presumption. Section 5 [section 6137], supra, provides that the presumption is overcome if the court finds that the blood grouping tests of all the experts discloses that the husband is not the father of the

4. This issue arose in *Goldman* because in 1957 the Supreme Court had held that the prior version of the Act, enacted in 1951, did not apply to actions brought for the support of children born during wedlock. *See Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1957). Upon repeal of the 1951 Act and replacement of it by the 1961 Act, the question of the applicability of the Act to children born during wedlock once again arose.

child. The courts are not at liberty to ignore this provision.

*Id.,* 199 Pa.Superior Ct. at 280, 184 A.2d at 353–54.

Thus, *Goldman* established that an alleged father has the right to compel blood tests in a support action to attempt to rebut the presumption that a child born to a woman who was then the alleged father's wife is the alleged father's child.

For a period of some years following *Goldman,* this principle was consistently applied in cases arising under the Act. For example, in *Parenti v. Parenti,* 263 Pa.Super. 282, 397 A.2d 1210 (1979), the court summarily concluded that the alleged father of a child conceived during marriage had a right to blood tests under the Act in order to attempt to disprove his paternity and avoid a support obligation. Likewise, in *Nixon v. Nixon,* 354 Pa.Super. 232, 511 A.2d 847 (1986), the court held that an alleged father of a child conceived and born during the alleged father's marriage to the mother had a right to compel blood tests under the Act to disprove his paternity *even though* the alleged father could not otherwise rebut the presumption of legitimacy through proof of non-access or impotency. *Id.,* 354 Pa.Superior Ct. at 237, 511 A.2d at 850. The court clearly held that the Act provided an *additional* means of rebutting the presumption.

Even more recently, in *Jones v. Trojak,* 402 Pa.Super. 61, 586 A.2d 397 (1991), a panel of this court again confirmed that blood tests may be used as an additional or alternative means of rebutting the presumption that a child born during marriage is the child of that marriage. In *Jones,* a mother brought a support action against a man who she alleged to be the father of a child born to her during her marriage to another man. Thus, she sought to disprove the paternity of her husband, the presumptive father, from whom she was later divorced. The *Jones* court upheld the trial court's allowance of blood tests, specifically finding that paternity was a relevant fact under the Act even though the presumption of the former husband's paternity

had not already been rebutted by common law means. *Id.,* 402 Pa.Superior Ct. at 66–67, 586 A.2d at 399–400.

If the foregoing were the only pertinent cases, we could end our discussion here with the conclusion that appellant has an unquestionable right to the blood tests he requested in this case. We would find that although he could not rebut the presumption that the child was his through clear, direct and unanswerable proof of impotency or non-access, as was required by the common law, this is irrelevant to his right to blood testing under the Act. As was held in *Nixon, supra,* the Act provides appellant an alternate means of disproving paternity, i.e., through exclusionary blood tests. Thus, we would find that the trial court's refusal to accord appellant this opportunity deprived him of his statutory rights.

However, as the trial court noted, these are not the only authorities that need be considered in connection with the issue presented. In the past two years, certain cases have been decided which the trial court interpreted as casting doubt on the continuing viability of *Goldman, Parenti* and *Nixon.* We must now determine whether these cases are in fact determinative of our disposition of appellant's rights in this case.

The two cases in question are *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990), and *Scott v. Mershon,* 394 Pa.Super. 411, 576 A.2d 67 (1990). In *John M.,* the Supreme Court decided that a man who alleged that he was the father of a child born during the marriage of the mother to *another man* (the "husband") had no right to compel the husband to undergo blood testing under the Act. The mother and her husband had always and were presently living together with the child in question and their other three children as an intact family. The court based its decision primarily on the fact that section 6133 of the Act only required that the court order blood testing of the mother, child and *alleged father.* In *John M.,* the petitioner, who was not the mother's husband, sought to have the court order blood tests of the mother's husband, the pre-

sumptive father, for the purpose of disproving the husband's paternity. Finding that the husband was not the "alleged father" within the meaning of the Act, the court held that the Act simply did not apply. *John M.*, 524 Pa. at 315, 571 A.2d at 1385. The court further indicated that the interests of the Commonwealth in the stability of the intact family outweighed the interests of the alleged father in establishing his paternity.

In a separate concurrence by Justice Nix, in which four members of the court joined, Justice Nix described the effect of the Act on the presumption regarding children born in wedlock as follows:

> The Act does not relax the presumption that a child born to a marriage is a "child of the marriage;" it merely provides a mechanism through which an *alleged* father can accumulate evidence of paternity. This Act cannot be used by a third party, seeking to rebut the presumption, to compel a *presumed* father to submit to a blood test. Whatever interests the putative father may claim, they pale in comparison to the overriding interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit. These interests are the cornerstone of the age-old presumption and remain protected by the Commonwealth today.

*Id.*, 524 Pa. at 322–23, 571 A.2d at 1388.

Unlike in *John M.*, where a party outside a marriage sought to disprove the paternity of a presumptive father, in *Scott v. Mershon* the question presented was whether a mother had a right to obtain blood tests of herself, her child and a man other than her husband to prove that the other man was the child's father even though the child had been born during her marriage. The issue arose in the context of a support action by the mother against the other man. A panel of this court found that the Act did not give the mother a right to compel blood tests because in the context of the action before it, paternity was not a relevant fact and, thus, the threshold requirement of section 6133 was not fulfilled. The court reached this conclusion through

two routes, only one of which is pertinent here. First, the court concluded that since the mother had not rebutted the presumption that her child was a child of her marriage through common law means, i.e., proof of impotency or non-access, the paternity of the child was established (by the unrebutted presumption) in her husband. Thus, paternity was not a relevant fact and blood tests could not be used to rebut the presumption.

The *Scott* court did not base this holding on a close analysis of the language of the Act or cases construing it. It cited to no authority mandating that the presumption be rebutted *before* blood tests be ordered. Rather, the *Scott* court imposed this requirement in the case before it on policy grounds. It reasoned that the policies underlying the presumption that a child born in wedlock is the child of the marriage outweighed the interests of the mother in obtaining blood tests to disprove her husband's paternity and receive support from another man. The court stated:

> ... the Supreme Court ... in *John M.* treat[ed] the presumption as a rule established to carry out important social policy that cannot be easily abrogated, if at all.... the court[s] concluded that the presumption prevailed against arguable countervailing rights of one *asserting* paternity. The present case diverges factually ... in an important respect that only serves to strengthen the operation of the presumption. The third party to the marriage ... is not asserting his own paternity and seeking to be accorded rights. It is [the mother] who attempts to destabilize her own family by claiming that her husband is not the father.

*Id.*, 394 Pa.Superior Ct. at 417, 576 A.2d at 70.

The *Scott* court also found that the mother was estopped from questioning her husband's paternity since she had lived with him and the child and allowed her husband to support the child, thereby holding the child out as being her husband's.[5]

---

5. In the instant case, the mother does not seriously allege that appellant is estopped to deny paternity, nor would we credit such an

We find both *John M.* and *Scott* to be completely distinguishable from the instant case, which still must be decided under the rubric of *Goldman, Parenti, Nixon* and *Jones.* Both *John M.* and *Scott* involved factual situations that are not at all analogous to the facts of this case. In *John M.*, the Court found the Act to be completely inapplicable on the facts of the case because the person whose blood was sought was not one of the parties the Act referred to. In the instant case, in contrast, the appellant seeks blood tests of precisely those parties to whom the Act does refer, i.e., himself (the alleged father), the mother and the child.

Of greatest importance, however, is the fact that both *John M.* and *Scott* involved an attempt to disrupt an intact family by obtaining blood tests to prove that the presumed father of the child in question was not really the father, but rather that a third party outside the marriage was the true father. This case involves no such attempt. Here, there is no intact family to protect nor has there ever been one. Mother testified that the child in question does not even know appellant, the alleged father. Therefore, the concerns expressed by the Supreme Court in *John M.* and by a panel of this court in *Scott* regarding the interests of the Commonwealth in preventing the disruption of a marriage and an intact family are inapposite to our analysis of the rights of the parties to this case. Clearly these concerns motivated the court in both of those cases to prevent the party seeking blood tests to use the Act in a manner that undermined these interests.

The limited applicability of *John M.* and *Scott* to situations where an intact family is threatened by the allegation that the husband-presumptive father was not the biological father of a child in that family was also confirmed in *Jones, supra.* Although the facts in *Jones* were highly similar to those presented in *Scott,* the pertinent distinction between the cases was that in *Scott* the mother, her husband and the child were living together as an intact family, whereas in

argument had it been fully argued. This record does not reveal that appellant has ever held this child out as his own.

*Jones* the mother and her husband were divorced and there was no intact family including the child in question. The *Jones* court found this factual distinction crucial, opining that since there was no intact family in need of protection from attacks on the paternity of the presumptive father, and since there was no issue of estoppel (as had been present in *Scott*), paternity was a relevant fact and blood tests were appropriate to determine that fact.

The instant case is, of course, even more distinct from both *John M.* and *Scott* than was *Jones*. This case is a classic situation where there is not and never has been an intact family and where the Act does and should apply to permit the alleged father to disprove his paternity by rebutting the presumption in the manner set forth in section 6137. To hold otherwise would be to ignore the manifest legislative intent underlying section 6137, as expressed by Justice Nix in his concurrence to *John M.,* to allow alleged fathers to amass evidence to rebut the presumption through blood tests. A contrary holding would also contradict the principle established in *Goldman* that this use of blood tests applies equally to support actions against presumptive fathers of children born during wedlock. Thus, the trial court erred in refusing to order the blood tests requested by appellant.

Prior to concluding, we must also address the trial court's statement that even if it had ordered blood tests, the results of the tests could not have changed the court's conclusion that appellant had failed to rebut the presumption that the child in question is his because blood tests are only *some,* but not conclusive, evidence regarding paternity. The court suggested that even if it had committed error in refusing appellant's request for blood tests, that error was harmless. We disagree.

It is true that the results of blood tests are not conclusive in every case. *See John M., supra; Smith v. Shaffer,* 511 Pa. 421, 515 A.2d 527 (1986) (tests showing 99.99% probability that party is father are not conclusive). However, the trial court erred in deciding that blood tests

results can never be conclusive. The trial court completely ignored the fact that while the results of blood tests used affirmatively to prove paternity are not conclusive, the Act itself makes the results of blood tests used to *exclude* the paternity of a particular individual conclusive. Section 6137 expressly states that the presumption of legitimacy *"is overcome* if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child." 42 Pa.C.S.A. § 6137 (emphasis added). *See also Jones v. Trojak*, 402 Pa.Super. 61, 586 A.2d 397, 399 (1991); *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983). If appellant had been given the opportunity to obtain blood tests and the results of those tests completely excluded appellant as the father of this child, that evidence alone would conclusively rebut the presumption.

The trial court erred in refusing to allow appellant to exercise his statutory right to obtain blood tests to attempt to rebut the presumption under the circumstances of this case.

The order of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.