597 A.2d 1234

**Robert DONNELLY, Appellant,**

v.

**Denise M. LINDENMUTH.**

Superior Court of Pennsylvania.

Argued July 31, 1991.

Filed Oct. 21, 1991.

Yale F. Edeiken, Allentown, for appellant.

J. Karen Arnold, Bellefonte, for appellee.

Before MONTEMURO, TAMILIA and BROSKY, JJ.

TAMILIA, Judge:

Appellant, Robert Donnelly, takes this appeal from the Order of October 10, 1990 denying his petition for contempt and vacating the April 20, 1990 Order directing appellant, appellee, Denise M. Lindenmuth, and appellee's minor child, Tyler, to submit to human leukocyte antigen (HLA) blood tests. Apart from the birth of Tyler, this case has its nascence in a complaint in custody filed by appellant on March 27, 1990 to obtain partial custody of Tyler, born December 7, 1989. Appellant's complaint averred, *inter alia*, Tyler resided with appellee, appellant was Tyler's natural father, appellee was Tyler's natural mother, and Tyler was born out of wedlock.[1] On April 20, 1990, the parties, represented by counsel, appeared before a special custody master to contest the matter. By agreement of the parties, stipulation of counsel and with the approval of the court, it was ordered that the parties and Tyler submit themselves to HLA blood tests, the costs of which were to be paid in advance by appellant. Appellant deposited $300 with the Domestic Relations sections of the Court of Common Pleas of Northampton County to cover the costs of the HLA blood tests. The Domestic Relations section notified both parties they were required to appear on September 5, 1990 for tests, but on that date, appellee failed to appear with Tyler and on September 24, 1990, appellant filed a petition for contempt against appellee. On October 9, 1990,

---

1. Although appellee filed no answer to appellant's complaint, in her brief she asserts she has been married to her present husband since September 21, 1986, and thus Tyler was not born out of wedlock. Appellant does not dispute this assertion, which this Court accepts and considers crucial to our disposition of this case.

appellee filed a petition to vacate the Order averring, *inter alia*, that she failed to appear for testing because at the time she entered the agreement, the Supreme Court's most recent pronouncement on the issue of blood testing, *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 140, 112 L.Ed.2d 107 had not been published.[2] Appellee further averred the decision of the Supreme Court in *John M., supra*, made the Order of court compelling blood testing void. The trial court, on October 10, 1990, then entered the Order which forms the basis of this appeal.

We are called upon now by appellant to determine whether the trial court abused its discretion in vacating an Order requiring the natural mother of a child of allegedly disputed parentage and her child to undergo blood tests, pursuant to the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. § 6131 *et seq.* (Repealed. 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective in 90 days, now codified at 23 Pa.C.S. § 5104), in light of the Supreme Court's subsequent decision in *John M., supra.* The portion of the Uniform Act on Blood Tests upon which appellant relies states:

**Authority for test**

In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce *its* order if the rights of others and the interests of justice so require.

---

**2.** *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied*, 111 S.Ct. 140, was argued December 12, 1989, and decided March 19, 1990.

42 Pa.C.S. § 6133, repealed, currently at 23 Pa.C.S. § 5104(c). While the Act creates a statutory right to obtain blood testing to determine paternity, the right is not absolute and must be balanced against competing societal/family interests.

In this case, appellant seeks to rebut the presumption of legitimacy.[3] This presumption is time-honored and one of the strongest presumptions known to the law. *John M., supra; Minnich v. Rivera,* 509 Pa. 588, 506 A.2d 879 (1986); *Cairgle v. American Radiator Standard Sanitary Corp.,* 366 Pa. 249, 77 A.2d 439 (1951); *Scott v. Mershon,* 394 Pa.Super. 411, 576 A.2d 67 (1990); *Jones v. Trojak,* 402 Pa.Super. 61, 586 A.2d 397 (1990). "Traditionally, that presumption could be rebutted only by proof that a husband was incapable of procreation or had no access to his wife during the relevant period." *Michael H. v. Gerald D.,* 491 U.S. 110, 124, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91 (1989), *rehearing denied,* 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634.

No such proof has been produced in this case and we find the Supreme Court's holding in *John M.,* though based on a slightly different factual scenario, persuasive and controlling in the case before us. As noted by a recent panel of this Court:

> In *John M.,* the Supreme Court decided that a man who alleged that he was the father of a child born during the marriage of the mother to *another man* (the "husband") had no right to compel the husband to undergo blood testing under the Act. The mother and her husband had always and were presently living together with the child in question and their other three children as an intact

3. We also adopt the dicta of the Supreme Court in *John M., supra,* that:

> Since the legal distinction between "legitimate" and "illegitimate" children has now been eliminated in the Commonwealth by statute, the phrase "presumption of legitimacy" is now meaningless. Thus, this Court will no longer use the phrase "presumption of legitimacy" to describe the "presumption that a child born to a married woman is a child of the marriage," and therefore of the woman's husband.

*Id.,* 524 Pa. at 311–15, 571 A.2d at 1383–84, n. 2.

family. The court based its decision primarily on the fact that section 6133 of the Act only required that the court order blood testing of the mother, child and *alleged father*. In *John M.*, the petitioner, who was not the mother's husband, sought to have the court order blood tests of the mother's husband, the presumptive father, for the purpose of disproving the husband's paternity. *Faust v. Faggart*, 406 Pa.Super. 357, ——, 594 A.2d 660, 663 (1991). While the Supreme Court acknowledged the alleged father had certain rights and interests in establishing his paternity, the Court also recognized the substantial "rights and interests of others involved in and affected by its decision, namely the mother, her husband, the family unit and the Commonwealth. When we factor in those rights and interests, we find that the scales weigh heavily ... against court-ordered blood tests." *John M., supra,* 524 Pa. at 315–17, 571 A.2d at 1385.

In this case, although the putative father sought to compel the natural mother and the child to submit to blood tests rather than the husband, as was the case in *John M.*, we find the underlying theory posited by the Supreme Court equally applicable to any situation in which an alleged father seeks to compel testing of any member of an existing family, whether it be father, mother or child.

Aside from the compelling policy considerations militating against the use of blood tests in this case, we find no evidence appellant has met his burden of proof of overcoming the presumption by clear and convincing evidence to the contrary. *Burston v. Dodson*, 257 Pa.Super. 1, 390 A.2d 216 (1978). As stated previously, appellant has not refuted appellee's assertion she has been married continuously since 1986, more than three years before Tyler's birth. Appellant has provided no evidence appellee and Tyler had not lived with the husband continuously or in any way rebutted the presumption Tyler was not the product of appellee's marriage. As Chief Justice Nix stated in a Concurring Opinion in *John M.*, in which a majority of the Court joined, "[A] third party who stands outside the marital relationship

346

should not be allowed, for any purpose, to challenge the husband's claim of parentage.... [T]he presumption in this situation is irrebuttable and conclusive...." *Id.*, 524 Pa. at 323, 571 A.2d at 1389. Significantly, Chief Justice Nix then offered in a footnote that it would also follow that a third party standing outside the marital relationship is not entitled to compel either the mother or the child to undergo testing. *Id.* at n. 1. Since the presumption of legitimacy has not been rebutted and the fact the child was born during marriage has not been refuted, paternity is not an issue in this case and a blood test is not relevant. *See Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961 (1990); *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988).

For the foregoing reasons, we find the trial court did not abuse its discretion in following the Supreme Court's decision in *John M.*, which we find applies to any situation in which a party attempts to rebut the presumption that a child born to a married woman is the child of that marriage. As it relates to any issues of due process, this finding is completely supported by the holding of the United States Supreme Court in *Michael H., supra.* We affirm the Order of October 10, 1990, however, we direct the Court of Common Pleas of Northampton County to return to appellant any unused monies which he remitted in advance for the costs of blood testing.

Order affirmed.

BROSKY, J., concurs.

BROSKY, Judge, concurring.

I am in agreement with the majority's finding that the trial court did not abuse its discretion in vacating the Order requiring appellee and her son to undergo blood tests pursuant to 23 Pa.C.S. § 5104. I am also in agreement with the analysis employed by the majority. However, I do not wish to have conveyed by the language of the majority view that the sanctity of the family unit may never be disturbed

by the husband and/or wife in the determination of paternity of a child. This concurrence is to cite some instances where at the request of a wife or husband the court did compel blood testing of a third party alleged to be the biological father of the wife's child.

In reviewing the caselaw dealing with the right of a wife or husband to compel blood testing of a putative father it is necessary to examine the facts of each particular case; those facts are determinative of the specific holdings. The fact that a man and a woman are still married does not preclude the wife from compelling the blood test of a putative father in order to determine paternity of the wife's child. *Jones v. Trojak,* 402 Pa.Super. 61, 586 A.2d 397 (1990); 23 Pa.C.S. § 5104(c). A husband or live-in paramour can also compel blood testing of a putative father. *Wachter v. Ascero,* 379 Pa.Super. 618, 550 A.2d 1019 (1988).

We note that in the cases in which the wife or husband was not permitted to compel testing of the putative father the family unit was still intact, the husband had consented to paternity by holding the child out as his own and/or providing financial support, the wife's first husband had been ordered to provide child support, or the husband had assumed parental responsibilities with knowledge that his biological paternity was questionable. *See Scott v. Mershon,* 394 Pa.Super. 411, 576 A.2d 67 (1990); *Christianson v. Ely,* 390 Pa.Super. 398, 568 A.2d 961 (1990); *Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556 (1989); *Seger v. Seger,* 377 Pa.Super. 391, 547 A.2d 424 (1988).

I submit this Concurring Opinion for the purpose of stressing that, while a wife, husband, a family unit and this Commonwealth have substantial rights and interests in insuring that a family unit remains intact where viable, court ordered blood testing of a putative father remains an option available to a husband or wife in certain circumstances.