604 A.2d 738

**Thomas McCUE**

v.

**Diane McCUE, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 8, 1992.

Filed March 10, 1992.

James V. Fareri, Stroudsburg, for appellant.

Peter O'Donnell, Wilkes–Barre, for appellee.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

Appellant, Diane McCue takes this appeal from the February 28, 1991 Order denying her petition requesting appellee, Thomas McCue, to submit to HLA (human leukocyte antigen) blood tests. The parties were married on September 19, 1981 and resided together until they separated on June 21, 1990, when appellant left the marital residence with the three children born during the marriage. Matthew, born on August 8, 1989, is at the center of this controversy.

In approximately the first week of July, 1990, appellant informed appellee she believed he was not Matthew's father. When appellee encountered difficulties in attempting visitation with the children, he filed a petition for partial custody on or about July 2, 1990 in Luzerne County. On or about July 25, 1990, appellant filed a reciprocal complaint in support in Susquehanna County, where she was then residing. Thereafter, a custody Order was entered on October 26, 1990, granting partial custody of all three children to appellee. Appellant filed a petition for HLA testing on December 17, 1990, and a hearing was held before the Honorable Chester B. Muroski of the Court of Common Pleas of Luzerne County on February 27, 1991. During the hearing, appellant testified she began a "physical relationship" with David Maginley in November, 1988, and she believed Maginley was Matthew's natural father. Although

appellant testified she decided in approximately November, 1989 to leave her husband and move in with Maginley, she did not leave until June, 1990. Appellant further testified she continued to engage in sexual intercourse with her husband, but that he always used condoms. Appellee testified he was currently paying support for the three children. He also testified he lived continuously with his wife from the time of their marriage until they separated, and that she gave him no warning prior to leaving the marital home with the children. Appellee further testified that he and appellant engaged in sexual relations regularly throughout their marriage and approximately twice a week during the time Matthew was conceived. Appellee denied using condoms during this period.

Following the hearing, the trial court entered the Order from which this appeal is taken. The sole question presented for our review is whether the trial court erred in refusing to compel appellee to submit to HLA blood tests under the Uniform Act on Blood Tests to Determine Paternity, 23 Pa.C.S. § 5104.

The Uniform Act on Blood Tests states:

**Authority for test.**—In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

23 Pa.C.S. § 5104(c). "While the Act creates a statutory right to obtain blood testing to determine paternity, the right is not absolute and must be balanced against competing societal/family interests." *Donnelly v. Lindenmuth,* 409 Pa.Super. 341, 344, 597 A.2d 1234, 1235 (1991).

The presumption that a child born to a married woman is a child of the marriage, and therefore of the woman's husband, is one of the strongest presumptions known to the common law. *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied*, ‒‒ U.S. ‒‒, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Donnelly, supra; Scott v. Mershon*, 394 Pa.Super. 411, 576 A.2d 67 (1990); *Jones v. Trojak*, 402 Pa.Super. 61, 586 A.2d 397 (1990). "Traditionally, that presumption could be rebutted only by proof that a husband was incapable of procreation or had no access to his wife during the relevant period." *Michael H. v. Gerald D.*, 491 U.S. 110, 124, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91, 107 (1989), *rehearing denied*, 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634. The presumption can be overcome only by clear and convincing evidence to the contrary. *John M.* and *Donnelly, supra.* We agree with the trial court that appellant has provided no clear and convincing evidence to rebut the presumption, and we find no error in the trial court's resolution of the issue of credibility in favor of appellee.

Appellant relies upon the decision of a panel of this Court in the recent case of *Faust v. Faggart*, 406 Pa.Super. 357, 594 A.2d 660 (1991). Appellant contends *Faust* holds:

[T]he "presumption of legitimacy" is not a black letter presumption to be applied across the board in all situations where children are born during a marriage, but rather concerns public policy considerations which must be carefully considered and weighed under the facts of each case in order that an appropriate decision might be made as to whether blood tests are appropriate. Under *Faust*, and the line of cases cited therein, a *presumed* father may negate the presumption of legitimacy by the use of blood tests.

(Brief of Appellant at 14.) This analysis of *Faust* would improperly expand the law and apply the law in a manner different from that which has gone before. The presumption of legitimacy is always the starting point in a contest involving the parentage of a child born during coverture. The *Faust* court, in dicta, was over-broad in stating that

only a few years ago the appellant therein would have been found to have a right to obtain blood tests of himself, the mother and the child and to use the results of those tests to attempt to rebut the presumption and avoid a support obligation. This statement was based on the deviation by two cases inferred from the original holdings in *Commonwealth v. Weston,* 201 Pa.Super. 554, 193 A.2d 782 (1963), and *Commonwealth v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962). *Goldman* held that despite what appeared to be new avenues for a husband to question the paternity of his wife's children, that right is not unlimited. "Where the husband has accepted his wife's child and held it out as his own over a period of time, he is estopped from denying paternity." *Id.,* 199 Pa.Superior Ct. at 283, 184 A.2d at 355. In *Goldman,* the husband apparently never held the children out as his own since he left his wife approximately three months after the birth of the second child and the third child was conceived and born subsequent to the separation. Since estoppel was not applicable the blood test was admissible as a "proceeding to establish paternity." *Weston,* with the same members of the court deciding and the same judge (Woodside, J.) authoring the Opinion as in *Goldman,* reaffirmed the *estoppel* doctrine by holding the husband's petition for a blood test must be denied where he had lived with his wife for several years after the birth of both children. "There is no suggestion that he did not accept them as his children prior to filing his petition." *Weston, supra,* 201 Pa.Superior Ct. at 557–58, 193 A.2d at 783. In *Nixon v. Nixon,* 354 Pa.Super. 232, 511 A.2d 847 (1986), and *Parenti v. Parenti,* 263 Pa.Super. 282, 397 A.2d 1210 (1979), this Court, treating *Goldman* as creating a new means of rebutting the presumption of legitimacy, held the blood test could be used for that purpose. *Faust* recognizes these cases derived no support in subsequent rulings by our Supreme Court and are of questionable validity.

Three issues commonly arise in cases concerning paternity when the marriage of the mother and presumed father is a fact which becomes controlling. First is the presumption of legitimacy (or child of the marriage). Cases which ruled

on this presumption attribute to it the status almost of substantive law, which must be rebutted by clear and convincing evidence before a blood test is relevant. *Michael H., Donnelly, John M.* and *Scott, supra; Ware v. McKnight,* 368 Pa.Super. 502, 534 A.2d 771 (1987); *Matter of Montenegro,* 365 Pa.Super. 98, 528 A.2d 1381 (1987); *Seger v. Seger,* 377 Pa.Super. 391, 547 A.2d 424 (1988); *Ermel v. Ermel,* 259 Pa.Super. 219, 393 A.2d 796 (1978); *Adoption of Young,* 469 Pa. 141, 364 A.2d 1307 (1976).

■ Secondly is the estoppel of a parent from testifying to paternity by a person other than the husband or rebuttal of the presumption of legitimacy. *Seger, Weston* and *Goldman, supra.* This occurs when the parents, in the course of the marriage and thereafter, treat the child as their own and subsequently one or the other attempts to repudiate paternity.

■ Finally is the issue of collateral estoppel or res judicata. *Commonwealth ex rel. Coburn v. Coburn,* 384 Pa.Super. 295, 558 A.2d 548 (1989); *Commonwealth ex rel. Palchinski v. Palchinski,* 253 Pa.Super. 171, 384 A.2d 1285 (1978); *Adoption of Young, supra;* and *Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 203 Pa.Super. 179, 199 A.2d 490 (1964). These cases hold that a legal determination of paternity for custody or support purposes, unappealed from, forecloses any further litigation on that issue. The remaining cases are anomalies which held a blood test may be used to rebut the presumption of legitimacy; *Nixon* and *Parenti, supra,* and dicta in *Jones, supra,* which ignored *John M., supra.* The only softening of the commonlaw rule applies primarily to the ability of parent to testify as to non-access. *Commonwealth ex rel. Savruk v. Derby,* 235 Pa.Super. 560, 344 A.2d 624 (1975). (Because the rule prohibiting a parent to testify to non-access no longer has validity and "lacks a basis in good sense or in sound public policy, *we are compelled to abandon its dictate." Id.,* 235 Pa.Superior Ct. at 566, 344 A.2d at 627.) Thus the prohibition against a parent testifying to non-access is no longer applicable in cases where paternity is at issue.

From our analysis of the relevant case law, it is clear that the blood test itself may not be used to rebut paternity in the first instance as has been stated in *Nixon* and *Parenti, supra.* Following rebuttal of the presumption the child is a child of the marriage by clear and convincing evidence, the blood test becomes relevant to determine parentage (§ 5104(f), (g)), and as increasingly is the case, to establish the probability that a party is or is not the parent of the child. The necessity to follow the commonlaw requirement of proving non-access or impotence has not been eliminated by enactment of the blood test act. *Michael H.* and *John M., supra.* The only relaxation of the commonlaw rule as to rebutting the presumption of legitimacy is the requirement that a parent could not "bastardize" his/her child by testifying to non-access. *Savruk, supra.*

*Faust* is factually inapposite to this case, and, in any event, we find this case governed by the Supreme Court's decision in *John M., supra,* and our prior decision in *Scott, supra.* In *Faust, supra,* the parties had been married and were divorced. Subsequently, the mother initiated a support action against her former husband, the alleged father, who denied paternity and sought blood tests of himself, the mother and the child. The *Faust* court found the case distinguishable from *John M.* and *Scott* because the blood tests sought were of those parties specifically enumerated in section 5104(c), "the mother, child and alleged father," and also because the policy considerations set forth in *John M.* and *Scott* were not present where there was no intact family to preserve. *Faust, supra,* 406 Pa.Superior Ct. at 367, 594 A.2d at 665. *Faust,* however, may not be extended to hold that when the family was intact during conception and/or birth, followed by a separation or divorce, the mere fact of separation or divorce having destroyed the unity of the family permits one or the other parent, for that reason alone, to request a blood test in aid of rebuttal of the presumption of legitimacy. In *John M., supra,* Chief Jus-

tice Nix, in a concurring opinion joined in by the entire Court, stated the following:

Irrespective of the legal title given this presumption (whether it be "presumption of legitimacy" or the presumption that the child born is the "child of the marriage"), it should remain clear that a child born to a married couple will be presumed to be the issue of the husband. That presumption can be overcome only by proof of facts establishing non-access or impotency. *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951). It continues to be one of the strongest presumptions within our law. *Commonwealth ex rel. Leider v. Leider*, 434 Pa. 293, 254 A.2d 306 (1969); *Cairgle, supra; Commonwealth ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 136 A.2d 451 (1958).

. . . . .

*The Superior Court erred for the presumption is absolute. The Act does not relax the presumption that a child born to a marriage is a "child of the marriage"; it merely provides a mechanism through which an alleged father can accumulate evidence of paternity.* *Id.*, 524 Pa. at 322, 571 A.2d at 1388 (emphasis added). As a result, we find *Faust* inapplicable to the disposition of this case, and we reach our decision based on the estoppel principles and public policy considerations of *John M.* and *Scott.*

In *John M., supra,* the Supreme Court stated:

[U]nder certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as father of the child. The classic example of this principle is where a man who has lived with a woman and her children for a number of years and has held himself to the world as the father of said children, may be estopped from seeking court-ordered blood tests in a belated attempt to deny paternity. These estoppel cases indicate that where the principle is operative, blood tests may well be *irrelevant,* for the law will not permit a person in these situations to challenge the status which he or she has previously accepted.

*Id.,* 524 Pa. at 318, 571 A.2d at 1386 (citations omitted); *see also* 48 P.S. § 167. While stated as dicta in *John M.,* we find the estoppel doctrine is compelling in this case.

In the case before us, Matthew McCue was born on August 8, 1989 while the parties were married and living together with their other two children. Appellee assisted in the delivery of the baby and took the child into his home after its birth. The parties and their children then lived together as a family until they separated on June 21, 1990. Were this conduct not sufficient evidence that both parties held appellee out as the father, we also note appellant's complaint in support averred the parties were the parents of all three children. Appellee has never disputed these facts or averments and voluntarily made support payments for his children. Clearly, appellant is estopped from denying appellee's paternity, for it is not "plausible ... for a mother, after separation, to be able to disclaim a child as being that of her husband when the child was conceived during marriage and they have lived in a family relationship in which the husband apparently held out the child to be his own." *Christianson v. Ely,* 390 Pa.Super. 398, 408, 568 A.2d 961, 966 (1990). When a parent is estopped from denying paternity and the presumption of legitimacy has not been rebutted, paternity is not a relevant fact, *id.,* and our review ceases. If this were not enough, appellant is precluded from pursuing this action because in the earlier support and custody actions, which resulted in a final Order not appealed, the legal determination of paternity was established and may not now be litigated under the doctrine of collateral estoppel or res judicata. *See Coburn, Adoption of Young* and *Nedzwecky, supra.*

Based on the foregoing analysis, this Court need not restate the compelling public policy considerations supporting our decision, except to reaffirm that they involve substantial "rights and interests of others involved in and affected by its decision, namely the mother, her husband, the family unit and the Commonwealth. When we factor in those rights and interests, we find that the scales weigh

heavily ... against court-ordered blood tests." *John M.,* *supra,* 524 Pa. at 315–17, 571 A.2d at 1385. We also reaffirm our prior holding that *John M.* "applies to any situation in which a party attempts to rebut the presumption that a child born to a married woman is the child of that marriage." *Donnelly, supra,* 409 Pa.Superior Ct. at 346, 597 A.2d at 1236.

Order affirmed.

FORD ELLIOTT, J., concurs.

FORD ELLIOTT, Judge, concurring.

I concur in the result reached by the majority. However, I would affirm on the basis of the rationale expressed in *Faust v. Faggart, supra* and *John M. v. Paula T., supra.* Similar to *John M.,* the facts in the instant case represent an *irrebuttable* presumption of paternity. The child was born into an intact family and the presumed father has at all times held himself out as the father of the child. As noted in *Faust,* paternity is no longer a relevant fact in any proceeding regardless of whether it is instituted by a purported father, a presumed father or a natural mother. Therefore, consistent with the rationale in *Faust* and *John M.,* I find this case to be factually distinguishable from *Nixon, supra, Parenti, supra,* and *Jones, supra,* where only a rebuttable presumption was established. In *Nixon,* a child was conceived after the married parties had separated and been living in different states for years. In *Parenti,* a child was conceived one month after the married parties had separated and was born six months after their divorce was granted. In *Jones,* a child was born during the marriage between husband and wife, however, sexual relations had ceased between the parties. Shortly after the birth of the child, the husband and wife separated and the parties were subsequently divorced. I consider that in these cases, blood test results were properly admitted as would have been any evidence of non-access or impotency to rebut the presumption of paternity which was premised solely on the existence of a marriage in name only.