## Kitko v. Kitko

*Steven S. Hurvitz,* for plaintiff Robert F. Kitko Jr.
*Kimberly M. Kubista,* for defendant Phyllis Kitko.
*John R. Ryan,* for petitioner Darron Stratton.

AMMERMAN, *J.,* October 4, 1995—Hearing on petition to intervene filed on behalf of Darron Stratton was held before the court on August 15, 1995 in the above captioned custody action. The petition to intervene concerns Tess Eleana Kitko, born April 22, 1993 to defendant Phyllis A. Kitko and purportedly to plaintiff Robert F. Kitko Jr. During the pendency of the custody dispute between Mr. and Mrs. Kitko, Mr. Stratton filed a petition to intervene claiming that he is the natural father of Tess and should be permitted to become a party to the custody action.

The court had previously set forth a history of the case in its opinion and order dated June 29, 1995, which concerned the court's dismissal of the preliminary objections filed on behalf of plaintiff to Darron Stratton's petition to intervene. The matter is now before the court for decision as to whether petitioner has produced sufficient evidence to the court to permit, by law, his intervention in the action.

Testifying at the hearing before the court was petitioner, who indicated that he had a four year relationship with Mrs. Kitko, which relationship started sometime shortly prior to the first time that Mr. and Mrs. Kitko separated in September 1991. Petitioner cur-

rently resides with Mrs. Kitko and Tess, and his uncontradicted testimony indicated that he was having sexual relations with Mrs. Kitko during the period of Tess's conception in August 1992.

Following the conception of Tess in August 1992, Mrs. Kitko informed petitioner that she was pregnant. Mrs. Kitko had previously told petitioner she was not having sex with her husband Mr. Kitko, with whom at the time she was residing. When Tess was born in April 1993 Mrs. Kitko told petitioner that he was the father.

Cross-examination showed that after Tess's birth and the final marital separation, Mrs. Kitko filed a support action against Mr. Kitko for Tess. Petitioner was aware of this at least at the point when the checks started to arrive from the domestic relations office. Petitioner was not aware that Mrs. Kitko, both through the domestic relations office and the custody proceedings, had filed various legal documents asserting and verifying that Mr. Kitko was Tess's father.

The only other witness called by petitioner was Carla Acey, a friend of Mrs. Kitko who knows all parties herein. Of interest was her testimony indicating that Mrs. Kitko had informed her that after her first reconciliation with Mr. Kitko (which includes the conception period) she and Mr. Kitko were having oral sex only.

Robert Kitko Jr. also testified. He indicated that in August 1992 he and Mrs. Kitko had gone away for a weekend to Lancaster in order to celebrate Mrs. Kitko's birthday. His testimony was that he and Mrs. Kitko had intercourse on numerous occasions that weekend and that he certainly had sexual access as well as actual sexual relations with Mrs. Kitko both before, during and subsequent to the period of conception.

Mr. Kitko indicated that there was no question in his mind from the beginning but that he was Tess's father. Evidence further showed he and Mrs. Kitko were still living together as husband and wife at the time Tess was born. He also has been paying support for Tess since shortly after the final separation.

Mr. Kitko's cousin, Emily Kitko, testified before the court. She confirmed the August 1992 trip to Lancaster taken by Mr. and Mrs. Kitko and that Mrs. Kitko had told her that there were numerous incidences of sexual intercourse during this vacation trip. Lisa Hicks, Mr. Kitko's brother's fiancee, confirmed the August 1992 trip to Lancaster and indicated that Mrs. Kitko had told her that while she and Mr. Kitko were living together as husband and wife she had never been unfaithful to him and that Mr. Kitko was Tess's father. Of note was the failure of Mrs. Kitko to testify for either petitioner or Mr. Kitko.

Preliminarily, the court does not believe that the petition to intervene should be dismissed due to Mr. Kitko's claim of alleged undue delay on petitioner's part. In addition, the doctrine of collateral estoppel is not applicable to this case as petitioner was not a party to any previous legal proceedings concerning the child. Therefore the petition to intervene will not be dismissed by this court based upon either of the above preliminary issues.

The major and controlling issue in this case is whether the petitioner has overcome the presumption that Mr. Kitko is the biological father of Tess. In order to intervene, petitioner must first rebut the presumption that Tess is the natural child of Mr. and Mrs. Kitko. *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990). Although the petition to intervene has attached as an exhibit results of D.N.A. blood testing, the law is clear

that a blood test may not be used to rebut paternity in the first instance. The presumption that a child born of the marriage is a child of the marriage must be rebutted by clear and convincing evidence before the blood test is relevant. *McCue v. McCue,* 413 Pa. Super. 71, 604 A.2d 738 (1992). The presumption of paternity concerning a child conceived and born during the marriage can be rebutted only by proof that a husband was impotent or sterile, or had no access to his wife at the time of the child's conception. *John M. v. Paula T., supra.* In this case, there has been no evidence presented that Mr. Kitko was impotent or sterile.

Without question the proposition that the presumption that a child born to a married woman is a child of the marriage is one of the strongest presumptions that exists in our law, which can only be overcome by clear and convincing evidence. See *Paulshock v. Bonomo,* 443 Pa. Super. 409, 661 A.2d 1386 (1995); *John M. v. Paula T., supra.* See also, *Woy v. Woy,* 444 Pa. Super. 232, 663 A.2d 759 (1995).

In the instant case, the evidence established that Mr. Kitko did have sexual access, and actual sexual relations, with his wife during the period of conception. Tess was born while Mr. and Mrs. Kitko were still living together as husband and wife. In no way can this court interpret the evidence presented at the hearing as showing that the presumption of paternity that is so strongly established in our law has been overcome by any measure, let alone one requiring clear and convincing evidence. Petitioner attempts to argue that the presumption only applies when an intact family unit exists, citing *Freedman v. McCandless,* 539 Pa. 584, 654 A.2d 529 (1995), which deals with the presumption in relation to the issue of collateral estoppel. However, in this case non-marital considerations taken into account in-

clude that Mr. Kitko has attempted to be a diligent father, paid support, sought custody and has had visitation since final separation. In any event, our appellate decisions in both the Supreme and Superior Courts do not lead this court in any direction in this case other than the strict application of the traditional presumption.

## ORDER

Now October 4, 1995, the court being satisfied that petitioner Darron Stratton has not met his burden of proof by clear and convincing evidence, it is the order of this court that his petition to intervene be and is hereby denied.