## Baker v. Jackson

*Patricia A. Brooks Brisini,* for plaintiff.
*Joseph B. Policicchio,* for defendants.

CASCIO, *J.,* December 2, 1991—This case is again before the court on plaintiff's motion for blood tests. On September 17, 1991, we held a hearing on this motion in an effort to define the precise issues raised and the manner in which to proceed. The plaintiff alleges that he is the father of a child who has now been born to Gloria Jackson (hereinafter mother). At the time of the child's birth, mother was living with Duane Jackson (hereinafter presumed father) to whom she is married. This action was filed and the first hearing was held before the child was born.

In this motion, inter alia, plaintiff sought an order requiring that blood tests be performed on plaintiff, the mother, the presumed father and, at birth, on the child. We were unable to hold a full hearing on the request on September 17, because the mother and the presumed father had not been served with the motion. We were able to hear preliminary arguments from counsel for the parties and, after taking the matter under advisement, we determined that it was necessary for

plaintiff to produce evidence of a prima facie claim of paternity before we would consider ordering blood tests. Accordingly, on September 24, 1991, we ordered that an additional hearing be held promptly to allow plaintiff to come forward with his evidence, and directed that all relief requested in the motion abide our decision after the hearing.

## FACTS

The additional hearing was held on October 3, 1991. Plaintiff and mother both testified in plaintiff's case. Neither mother nor the presumed father offered any evidence. Counsel for the parties stipulated that the child was born on September 26, 1991, at Somerset Community Hospital.

According to plaintiff, he and mother have known each other since their school days and they began their relationship on November 20 or 21, 1990, while mother and the presumed father were married and living together. He stated that mother told him that the marriage was over and she wanted nothing to do with the presumed father, leading plaintiff to believe that they were no longer sexually involved.

Plaintiff stated that he and mother first had sexual intercourse on or about November 22, 1990, and continued to be sexually intimate four or five times per week at her home. He claimed that he wanted to marry her eventually, that he would not have had sex with her if she was still having sex with the presumed father, and that she told him that she was not having sex with the presumed father at the time.

According to plaintiff, mother advised him that she told the presumed father of her affair with the plaintiff on December 27, 1990, that the presumed father left the marital home on January 13, 1991, and that he

moved in with mother the same day. He stated that he and mother continued to have sex four to five times per week until she advised him that she suspected that she was pregnant, sometime around March 28, to March 30, 1991.

Plaintiff and mother continued to reside together until May 5, 1991, when mother and the presumed father reconciled. On cross-examination, plaintiff admitted that he could not state for a fact that the presumed father had no access to mother between November 1990 and May 5, 1991, and that between January and May 1991, the presumed father came to the home occasionally to pick up the other children of the marriage for visitation. Plaintiff was present on some of these occasions, but not always. Plaintiff estimated that the child was conceived sometime in December 1990.

On re-direct examination, plaintiff stated that mother told him on several occasions that he was the father of the child she was carrying. He also stated that the mother later asked him to sign papers to permit the child to be adopted because she felt that neither her family nor the presumed father's family would treat the child properly and that the presumed father had told her that he was not going to raise someone else's child.

When called to testify by plaintiff's counsel, mother verified that she and plaintiff began having sexual relations toward the end of November 1990. She testified that she didn't know if the baby was full term when born, but that her due date had been estimated by her doctor to be October 3, 1991. She also admitted telling plaintiff that he was the father on one or two occasions. In addition, she stated that she did have sexual intercourse with the presumed father toward the middle

of January 1991, before he moved out of the marital home.

On cross-examination, mother stated that she doesn't think she had sexual relations with the presumed father in December 1990, but that she had intercourse with him one time during November 1990, and one or two times during January 1991. In response to a question by the court, mother testified that she advised her doctor that her last menstrual period occurred at the beginning of January 1991.

## DISCUSSION

We find from our research that we can dispose of a portion of this case with little difficulty. In *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied*, 41 S.C. 140, the Supreme Court of Pennsylvania ruled that a third party claiming to be father of a child born to a married woman cannot require the husband to submit to blood testing procedures either under the provisions of Pa.R.C.P. 4010 or under the provisions of the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. §6131-6137. The facts in that case are similar to those in the case at bar, because both deal with a situation where the party seeking the blood tests is the party claiming to be the father of a child born to a woman who was married and living with the presumed father at the time of the birth. Also, as in the case at bar, the issue in *John M.* arose, not in the usual fashion which involves a matter filed in the context of a support case, but, rather, in a separate civil proceeding unrelated to the issues of support. Thus, we do not read the decisions in *John M.* as changing the procedure to be followed in cases which raise the provisions of the Uniform Act as suggested by counsel for the mother and the presumed father.

It also appears that *John M.* resolves the issue concerning the blood tests relative to mother and the child. In a concurring opinion, joined by all of the justices who heard the case, including Justice Larsen, the author of the majority opinion, Chief Justice Nix stated:

"Irrespective of the legal title given this presumption (whether it be 'presumption of legitimacy' or the presumption that the child born is the 'child of the marriage'), it should remain clear that a child born to a married couple will be presumed to be the issue of the husband. That presumption can be overcome only by proof of facts establishing non-access or impotency ... the presumption is absolute. The [Uniform] Act does not relax the presumption that a child born to a marriage is the 'child of the marriage;' it merely provides a mechanism through which an *alleged* father can accumulate evidence of paternity. This Act cannot be used by a third party, seeking to rebut the presumption, to compel a *presumed* father to submit to a blood test. Whatever interests the putative father may claim, they pale by comparison to the overriding interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit." *John M., supra,* at 322, 571 A.2d at 1388. (emphasis in original)

The opinion concludes with a footnote which states that "[i]t would also follow that appellee is not entitled to *compel* either the mother or the child to undergo testing." *Id.* at 323, 471 A.2d at 1389, n. 1. (emphasis in original)

The fact that plaintiff seeks to disrupt an intact family appears to be the key to distinguishing the situation in the present case from those cases which have held

that, under the language in §6137* of the Uniform Act, the blood test results may be used to rebut the "presumption of paternity" or the presumption that a child born to a married couple is the "child of the marriage." See *Faust v. Faggart,* 406 Pa. Super. 357, 594 A.2d 660 (1991), and cases cited therein. Here, although mother and presumed father were separated from mid-January until early May of 1991, they were married and living together as a family with their other children when this motion was filed, when the child was born and when the hearings on the motion were heard.

Thus, we are compelled by the dictates of the relevant cases to deny plaintiff's motion for blood tests. We hasten to add, however, that this ruling is only dispositive of the current motion. Because we ordered that plaintiff establish only a prima facie claim of paternity in order to invoke our jurisdiction over the subject matter of the motion, we will not exceed the limits of our intended inquiry and determine whether or not plaintiff has overcome the "presumption of legitimacy" or the presumption that a child born to a married couple is a "child of the marriage." We find only that plaintiff established, prima facie, that he *could* be the father of the child as the record indicates that he was having sexual intercourse with the mother during the potential period of conception. See *Commonwealth ex rel. Hockenberry v. Stanczyk,* 41 Somerset L.J. 67 (1981).

Because of our ruling, we also deny the other relief requested in the motion, which included a restraining

---

\* §6137—*Effect of presumption of legitimacy*

The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child.

order and an order requiring the mother to notify plaintiff of the location of the child and the intentions of the mother and presumed father regarding adoption. We remain convinced that the relief available to plaintiff under the Adoption Act, as recited in our previous memorandum, is sufficient.

## ORDER

And now, December 2, 1991, consistent with the following memorandum, plaintiff's motion for blood tests and the relief requested therein is hereby denied.