586 A.2d 397

**Kathryn JONES, Appellee,**

v.

**Joseph TROJAK, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1990.

Filed Dec. 14, 1990.

Reargument Denied Feb. 22, 1991.

Petition for Allowance of Appeal Granted July 29, 1991.

---

62

64

Ronald Ervais, Philadelphia, for appellant.

Paul R. Beckert, Jr., Bensalem, for appellee.

Before WIEAND, McEWEN and HUDOCK, JJ.

WIEAND, Judge:

On January 20, 1988, Kathryn Jones filed a complaint for support against Joseph Trojak in which she alleged that Trojak was the biological father of Katie Jones, a female child born October 30, 1981. At the time of Katie's conception and birth, however, Kathryn Jones was married to and living with her husband, William Jones. Jones is named as father on the hospital records, as well as on Katie's birth and baptismal certificates. Thereafter, Kathryn and William Jones lived together with their four children and Katie until April, 1982, when they separated. They were subsequently divorced.

Joseph Trojak met Kathryn Jones in 1979 at a time when Kathryn and William Jones had discontinued sexual intimacies. Trojak and Kathryn commenced a sexual liaison in February, 1980, which continued until Katie was conceived. On or about September, 1984, Trojak began making voluntary support payments for Katie and continued to make payments in gradually increasing amounts until March 13, 1988. In response to the complaint for support, however,

he denied paternity, contending that William Jones was the presumed father of Katie.

When the case was tried on June 15, 1988, the trial court ordered the parties, together with Katie and William, to undergo blood tests to aid in determining paternity. Trojak objected. He contended that the complainant had failed to rebut the presumption of William's paternity and that blood tests, therefore, were unnecessary. His objections were overruled, and blood tests were thereafter administered. The results demonstrated that William cannot possibly be Katie's father and that Trojak shares genetic markers with Katie which give rise to a probability of 99.9% that he is the biological father. On October 26, 1988, the court adjudged Trojak to be Katie's father. An appeal was filed but discontinued after the trial court granted a new trial. At the same time, the trial judge recused himself from further participation in the proceedings.

A second trial was held on June 13, 1989. In response to objections to use of the prior blood test results, the court, on June 19, 1989, entered an order that the prior blood tests had been properly ordered and that the results would be considered in determining paternity. The order also directed the parties to advise the court if additional hearings were required. It is from this order that the present appeal was filed. A motion to quash the appeal was denied by a single judge of the Superior Court. Thereafter, on January 11, 1990, the trial court filed an opinion and order adjudicating that Trojak was Katie's natural father. The trial court did not enter an order of support, however, and a separate appeal was not taken from the order adjudicating paternity. Nevertheless, the parties have requested this Court to review not only the order from which the appeal was taken but also the adjudication of paternity.

■ Whether the trial court's order of June 19, 1989, was appealable is not free from doubt. A motion to quash, however, was denied by a judge of this Court, and that ruling was not reviewed by the full Court. The issue of appealability, moreover, was not again briefed or argued by

the parties. Under these circumstances and in the interests of judicial economy and fairness to the parties, we will consider this appeal on its merits.

■ After careful review, we hold that the blood tests were properly obtained. However, the test results were not properly proved at the second trial. Therefore, the trial court erred when it ordered that the results would be considered in determining paternity.

■ The presumption that a child conceived and born during a marriage is a child of the mother's husband is one of the strongest presumptions in the law. *John M. v. Paula T.*, 524 Pa. 306, 313, 571 A.2d 1380, 1384 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Manfredi Estate*, 399 Pa. 285, 289, 159 A.2d 697, 699 (1960); *Scott v. Mershon*, 394 Pa.Super. 411, 413, 576 A.2d 67, 68 (1990); *Connell v. Connell*, 329 Pa.Super. 1, 6, 477 A.2d 872, 875 (1984). Traditionally, courts have permitted the presumption to be overcome only by evidence which clearly and convincingly establishes "non-access or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten." *Commonwealth ex rel. Ermel v. Ermel*, 259 Pa.Super. 219, 221, 393 A.2d 796, 797 (1978), quoting *Cairgle v. American Radiator & Standard Sanitary Corp.*, 366 Pa. 249, 255, 77 A.2d 439, 442 (1951) (citations omitted). See, e.g., *John M. v. Paula T., supra,* citing *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989); *Commonwealth ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 136 A.2d 451 (1957); *Cairgle v. American Radiator & Standard Sanitary Corp., supra; Burston v. Dodson*, 257 Pa.Super. 1, 390 A.2d 216 (1978). However, since the adoption in Pennsylvania of the Uniform Act on Blood Tests to Determine Paternity (The Uniform Act), 42 Pa.C.S. §§ 6131 et seq., the presumption of a husband's paternity may also be overcome, under the provisions of 42 Pa.C.S. § 6137,[1] by blood

1. This section provides as follows:

tests which exclude him as the possible father. *Nixon v. Nixon*, 354 Pa.Super. 232, 511 A.2d 847 (1986). See also: *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 184 A.2d 351 (1962) (Uniform Act of 1961 applies to action for support of minor children born during wedlock).

Recently, the application of the Uniform Act was limited by judicial decision. In *John M. v. Paula T.*, *supra*, the Pennsylvania Supreme Court held that a putative biological father, seeking custody or visitation, could not compel blood testing to rebut the presumption of a husband's paternity where, despite evidence of the mother's extramarital sexual relationship, the mother, child and husband had been living together as a family and the husband had assumed parental responsibility. Similarly, in *Scott v. Mershon*, *supra*, a panel of this Court held, in an action for child support against the putative father, that the mother was not entitled to compel blood testing to determine the putative father's paternity where the family unit was intact and her husband had assumed parental responsibility.

Instantly, we are not confronted with an intact family in need of protection. Kathryn Jones and her husband separated and were divorced shortly after Katie's birth. Moreover, Kathryn declined to accept contributions to Katie's support from her husband and, instead, received such contributions from Trojak. Under these circumstances, the *John M.* and *Scott v. Mershon* decisions do not bar the use of blood tests.

An order compelling the alleged father to submit to blood tests is authorized by 42 Pa.C.S. § 6133 in any matter in which paternity is a relevant fact. Section 6133 provides as follows:

In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant

§ 6137. **Effect on presumption of legitimacy**
The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child.

fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.

Paternity is a relevant fact in this support action. See: *Commonwealth ex rel. Coburn v. Coburn*, 384 Pa.Super. 295, 301, 558 A.2d 548, 551 (1989) (en banc), citing *Wachter v. Ascero*, 379 Pa.Super. 618, 550 A.2d 1019 (1988); *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987). Compare: *Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961 (1990) (in action for child support from putative biological father, paternity not a relevant fact for purpose of obtaining blood tests if mother estopped from denying husband's paternity because he had consented to paternity by holding child out as his own and/or providing financial support); *Sanders v. Sanders*, 384 Pa.Super. 311, 558 A.2d 556 (1989) (in action for child support from putative father, paternity not a relevant fact and blood tests not authorized where plaintiff's first husband had previously been ordered to provide child support); *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988) (in mother's custody action, paternity not relevant fact and blood tests not authorized where husband had assumed parental responsibility with knowledge that his biological paternity was questionable).

■ We reject appellant's contention that a factual and truthful determination of Katie's paternity is irrelevant because of the presumption that she was fathered by her mother's husband. Neither Katie's mother nor her husband acted in a manner following Katie's birth so as to estop either Katie or her mother from making a claim for child support against appellant. Compare: *Christianson v. Ely, supra; In re Adoption of Young*, 469 Pa. 141, 364 A.2d

1307 (1976) (where husband had assumed parental responsibility for child born during coverture mother estopped from later questioning paternity); *Commonwealth ex rel. Hall v. Hall*, 215 Pa.Super. 24, 257 A.2d 269 (1969) (where husband acknowledged child born during coverture as his own and provided for child's support in separation agreement he was estopped from later denying paternity). In the instant case, except for a brief period following her birth, Katie was not treated as if she were William's daughter.

A determination regarding appellant's paternity is necessary to a resolution of the child support claim made by Katie's mother in this case. A determination thereof may be made on the basis of properly admitted blood test results, as well as other evidence relevant to establish paternity.[2] The trial court did not err in finding that the blood tests had been properly obtained.

However, blood test results may be considered as evidence only if the results are adequately proved. The general rule with respect to the admission of medical test results was stated in *Commonwealth ex rel. Valentine v. Strongel*, 246 Pa.Super. 466, 371 A.2d 931 (1977), as follows:

A long line of Pennsylvania cases has held that '... reports of investigators, agents, and doctors cannot be received in evidence, or considered by the court, in a contested case. [citations omitted]. The investigators, agents, doctors, etc., must themselves be produced, sworn and examined as witnesses and be subject to cross-examination ...' *Commonwealth ex rel. Oncay v. Oncay*, 153 Pa.Super. 569, 570, 34 A.2d 839 (1943). See also, *Commonwealth ex rel. Rubertucci v. Rubertucci*, 159 Pa.Super. 511, 49 A.2d 269 (1946); *Commonwealth ex rel. Balick v. Balick*, 172 Pa.Super. 196, 92 A.2d 703 (1952); *Commonwealth ex rel. Mathis v. Cooper*, 188 Pa.Super.

2. The ancient rule that a wife or husband cannot testify to sexual non-access to overcome the presumption of legitimacy has been criticized as "an absurdity, arbitrary, illogical, and an eccentric incompetency" and has been rejected by a panel of this Court in *Commonwealth ex rel. Savruk v. Derby*, 235 Pa.Super. 560, 564 n. 4, 344 A.2d 624, 626 n. 4 (1975).

113, 146 A.2d 158 (1958). The right of a litigant to in-court presentation of evidence is essential to due process: 'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.' *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, [1021], 25 L.Ed.2d 287 (1970) (citing extensive authority).

Id. 246 Pa.Super. at 469–470, 371 A.2d at 932–933, quoting *Wood v. Tucker*, 231 Pa.Super. 461, 463, 332 A.2d 191, 192 (1974). The proper procedure for proving paternity blood test results is established by Section 6134 of the Uniform Act which states as follows:

The tests shall be made by experts qualified as examiners of blood types, who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts qualified as examiners of blood types perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court.

42 Pa.C.S. § 6134. In *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983), a panel of this Court ruled that in order to use the results of HLA (Human Leukocyte Antigen) tests to determine the probability of an alleged father's biological paternity, a proper foundation had to be laid. The Court stated:

The party seeking to affirmatively use the HLA results should show:

1. the effect of racial and ethnic variables.

2. any factors which might invalidate the test or affect its accuracy (for example, the AMA–ABA Guidelines indicate that HLA results are most reliable when the test is conducted in conjunction with other blood group tests.)

3. the procedures of the actual test.

4. the qualifications of witnesses.

Of course, the foundation laid must suit each case and we do not consider these guidelines exhaustive.

*Id.,* 312 Pa.Superior Ct. at 164, 458 A.2d at 565.

■ In the instant case, a printed report of the blood test results was issued by the laboratory which had performed the tests. However, the record does not contain medical testimony interpreting the test results, and it does not appear that the parties stipulated to the admissibility of the laboratory report. See: *Tyler v. King,* 344 Pa.Super. 78, 88, 496 A.2d 16, 21 (1985) (necessity for expert testimony under § 6134 waived where parties stipulated that blood test results were admissible as some evidence of paternity). Appellant's counsel stated that if the court should order testing before the second trial, there would be no need to repeat the blood tests which had previously been made. This statement, at most, suggested the absence of objection to the laboratory and methodology employed. The appellant did not thereby waive his right to have the evidence against him properly authenticated and proved. In the absence thereof, the results of the test could not properly be considered.

■ It is well established that "once a party takes an appeal to an appellate court the trial court is divested of jurisdiction over the subject matter until further order of the appellate court reinstating jurisdiction." *Ingram v. Dovertown Estates, Inc.,* 307 Pa.Super. 22, 26, 452 A.2d 884, 886 (1982), citing *Bartle v. Bartle,* 304 Pa.Super. 348, 450 A.2d 715 (1982). See also: Pa.R.A.P. 1701(a); *Corace v. Balint,* 418 Pa. 262, 275–276, 210 A.2d 882, 889 (1965) (error for trial court to modify or reverse an order from which appeal has been taken); *Sowers Estate,* 383 Pa. 566, 573, 119 A.2d 60, 64 (1956); *Kingsley Clothing Mfg. Co. v. Jacobs,* 344 Pa. 551, 553, 26 A.2d 315, 316 (1942). Because

72

the appeal in this case had vested jurisdiction of this case in the Superior Court, the trial court was without jurisdiction to make a final finding of paternity on January 11, 1990. An appeal from the court's order of June 19, 1989, was then pending in the Superior Court.

The right of the trial court to proceed to a determination of paternity was not authorized by Pa.R.A.P. 1701(b)(6). This rule permits a trial court to proceed further "in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order." In the instant case, however, appellee had filed a motion to quash the appeal from an alleged interlocutory order, and the motion to quash had been denied. As such, jurisdiction had vested in the Superior Court and was no longer in the trial court at the time when the trial court attempted to adjudicate the paternity issue. The court's order of January 11, 1990, therefore, is a nullity.

Upon remand, the trial court may receive additional testimony to aid it in making a determination of paternity. In any event, a new determination of paternity must be made. Thereafter, a final order awarding or denying support can be entered.

The order of June 19, 1989 is reversed, and the case is remanded to the trial court for further proceedings consistent with the foregoing opinion. Jurisdiction is not retained.