**Harper v. Harper**

*R. Scott Cramer,* for plaintiff.
*Craig D. Charles,* for defendant.
*Shaubut C. Walz III,* for the child.

QUIGLEY, *P.J.*, June 24, 1992—The matter before the court is one of paternity relating to the issue of child support of Joseph R. Harper. Ruth Harper, plaintiff, and Nelson Harper, defendant, were married on September 16, 1987. They lived together prior to their marriage. During the course of their marriage, William Allen Harper (January 19, 1979), Danielle K. Harper (November 17, 1984), and Joseph Ryan Harper (September 25, 1990) were born. The couple has since separated. Nelson Harper denies the paternity of Joseph Ryan Harper, thereby refusing support. Blood tests were ordered and taken from Ruth Harper, Nelson Harper and Joseph R. Harper on April 16, 1991. On July 10, 1991, the result of the blood tests were to be read in Perry County Court. Shaubut C. Walz III, Esquire, attorney for the child, objected to this reading. Judge Quigley sustained this objection pending further research on this issue.

The issue of paternity raises and carries important policy ramifications. The child has the potential of being bastardized by the proceedings. This court notes that the ultimate goal is to do what is best for the child while preserving the family.

The first issue this court must address is the propriety of ordering blood tests in a paternity action. This court has been liberal in the past with regards to ordering testing; probably too liberal. This court now considers DNA testing only after a thorough and in depth inquiry into the case history. In many circumstances, the party requesting such tests must also overcome a strong presumption of legitimacy before the tests will be considered. In conclusion, this court only views DNA testing as a final determination of paternity ordered only after a substantial basis for such tests has been presented, rather than a testing process by which a presumption is overcome.

In the present case, defendant has met his burden for the admission of DNA testimony. Plaintiff had sexual relations with defendant prior to the birth of the child, as well as another gentleman. Plaintiff has also testified that for several years, both she and defendant had gone their separate ways while still being married to each other. There is a strong presumption that a child conceived and born during a marriage is a child of the mother's husband. *Jones v. Trojack,* 402 Pa. Super. 61, 586 A.2d 397 (1990). As the Superior Court stated in *Faust v. Faggart,* 406 Pa. Super. 357, 362-63, 594 A.2d 660, 662 (1991), quoting 42 Pa.C.S. §6137 (1982), recodified at 23 Pa.C.S. §5104 (1990):

"The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child."

This court now finds that the presumption has been rebutted and accepts DNA testing as a final determinative factor in the paternity of Joseph Ryan Harper. As such, this court finds that defendant has overcome the presumption of legitimacy of a child in wedlock.

The court must next determine whether defendant had at any time after the birth of the child held him out as his own or treated him as his son. Based on plaintiff's testimony at a hearing, this court must find that at no time did defendant ever consider Joseph Ryan Harper his son. The General Assembly has codified the principal of paternity by estoppel in its Act of June 17, 1971, P.L. 175, No. 17, §1, as amended by Act of November 26, 1978, P.L. 1216, No. 288, §1, 48 P.S. §167 (1989), which provides:

*"Children; Legitimacy; Determination of Paternity—*

"(a) Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, that all children shall be legitimate irrespective of the marital status of their parents and in any and every case where children are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of such parents, except as otherwise provided in Title 20 Pa.C.S.

"(b) For purposes of prescribing benefits to children out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

"(1) If the parents of a child born out of wedlock shall have married each other.

"(2) If during the lifetime of the child, the father openly holds out child to be his and receives the child into home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

"(3) If there is a clear and convincing evidence that the man was the father of the child which may include a prior court determination of paternity." *John M. v. Paula T.,* 524 Pa. 306, 319, 571 A.2d 1380, 1386 (1990).

The principal of paternity by estoppel does not apply in the context of this case. It is the settled law of this state, that the well-being of the child is the court's main concern, and that a parent may not challenge paternity of a child once the father has acknowledged such paternity. *B.O. v. C.O.,* 404 Pa. Super. 127, 130, 590 A.2d 313, 314 (1991). Such an acknowledgment could be shown

by the conduct of the putative father in assuming a role of father in relationship to the child. *Commonwealth ex. rel. Coburn v. Coburn,* 384 Pa. Super. 295, 558 A.2d 548 (1988). In the present case there is no rational basis for such a finding.

In conclusion, we hold that the blood tests were proper to have been taken and the results thereof are admissible in any proceeding on the issue of paternity.

## ORDER

And now, June 24, 1992, in accordance with the within memorandum, the court finds that the results of blood testing are admissible into evidence as not being estopped, but subject to any other objections which might be appropriate, such as chain of custody, etc.