657 N.E.2d 157 (1995)
K.S., Appellant-Respondent,
v.
R.S., Appellee-Petitioner.
No. 55A04-9502-CV-42.
Court of Appeals of Indiana.
November 3, 1995.
Transfer Granted February 14, 1996.
*158 George A. Lohmeier, Indianapolis, for Appellant.
Michael A. Ksenak, Bowman & Ksenak, Indianapolis, for Appellee.

OPINION
CHEZEM, Judge.

Case Summary
Appellant-Respondent, K.S. ("Mother"), appeals the trial court's denial of her Trial Rule 60(B)(6) motion. We vacate the judgment of the trial court denying Mother's motion and vacate the Agreed Entry adopted by the trial court. We order this cause dismissed.

Issues
Mother presents two issues for our review which we restate as:
I. Whether a third party may establish paternity of a child born during the marriage of the child's mother and her husband, the statutorily presumptive father, while their marriage is still intact; and,
II. Whether an Agreed Entry establishing paternity over a child and entered into as a private contract between the parties is void as being against public policy.

Facts and Procedural History
Mother has been married to D.S. ("Husband") since 1979. Three children have been born into the marriage. The youngest child, D.S., born October 22, 1992, is the subject of this dispute. In February, 1994, R.S. filed a Petition to Establish Paternity in which he alleged that he, and not Husband, was the biological father of D.S. The parties do not dispute that while living with her husband next door to R.S., Mother and R.S. had sexual relations. There is no other evidence of R.S.'s paternity.
D.S. was not named a party in the paternity proceeding, and nor was a guardian ad litem appointed on his behalf. Contemporaneous with the Petition to Establish Paternity, R.S. filed an Agreed Entry which by its terms claimed R.S., and not Husband, was the biological father of D.S. Mother, Husband, and R.S. all signed the Agreed Entry, *159 which was thereafter adopted by the trial court.

Discussion and Decision

I
There are times when the facts presented to this court leave us with no satisfactory alternatives. Whatever the outcome of this decision, we cannot escape the reality that a child has been affected and will continue to be affected by the circumstances surrounding this case. Rather than allow the particulars of this case to cloud our interpretation of the law, we look instead to the potential outcomes of future cases with parties similarly-situated to how today's parties were situated before they entered into their agreement relating to the paternity of D.S. Relying instead on the common law, public policy, and legislative mandate to guide our judgment, we hold that no cause of action exists in Indiana when a third party attempts to establish paternity of a child born during the marriage of the mother and her husband while their marriage remains intact.
This issue is one of first impression in Indiana. Similar facts were presented to this court in H.J.F. (1994), Ind. App., 634 N.E.2d 551. The majority in H.J.F. did not determine whether such a cause of action should be allowed in Indiana; instead, the Court in H.J.F. focused on the reasons why a guardian ad litem should be appointed to represent the child when a presumptive father's[1] rights are challenged by a putative father. While we agree with the policy of appointing a guardian ad litem when a presumptive father's paternity is challenged, we distinguish the facts presented today from the facts of those cases relied upon by the Court in H.J.F. In each case relied upon by the Majority in H.J.F., the mother and presumptive father-husband were divorced before the putative father sought to establish paternity. We therefore disagree with any implied recognition by the Majority in H.J.F. of a cause of action when the mother and presumptive father-husband remain married.[2]
What is at stake today extends beyond simple concepts of paternity. R.S. asks us, in essence, to recognize his rights as a parent to D.S. Justice Scalia, in Michael H. v. Gerald D. (1989), 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, reh. den., clarified the gravity of what is asked of us:
What [putative father] asserts here is a right to have himself declared the natural father and thereby to obtain parental prerogatives. What he must establish, therefore, is not that our society has traditionally allowed a natural father in his circumstances to establish paternity, but that it has traditionally accorded such a father parental rights, or at least has not traditionally denied them. Even if the law in all States had always been that the entire world could challenge the marital presumption and obtain a declaration as to *160 who was the natural father, that would not advance [putative father's] claim. Thus, it is ultimately irrelevant, even for purposes of determining current social attitudes towards the alleged substantive right [putative father] asserts, that the present law in a number of States appears to allow the natural father  including the natural father who has not established a relationship with the child  the theoretical power to rebut the marital presumption.
Id. at 125, 109 S.Ct. at 2344 (emphasis in original and footnotes omitted).
As yet, the courts in Indiana have reviewed on the merits only cases in which the paternity statute has been applied after the divorce of the mother and her husband. Our supreme court has interpreted the paternity statute to apply when a mother and her husband have divorced but the child was found by the divorce court to have been a child of that marriage:
Indiana Code Ann. § 31-6-6.1-2 (West Supp. 1992) allows a man alleging that he is a child's biological father to file a paternity action. This provision makes no reference to the marital status of the mother. Thus, a putative father may establish paternity without regard to the mother's marital status, so long as the petition is timely filed. Of course, the putative father must put forth evidence that is "direct, clear, and convincing" to rebut the presumption that a child born during the marriage is legitimate. Fairrow [v. Fairrow (1990),] 559 N.E.2d 597 at 600.
In re Paternity of S.R.I. (1992), Ind., 602 N.E.2d 1014, 1016. Thus, the paternity statute has been interpreted by our supreme court to apply to children presumptively born in wedlock but only after the mother and presumptive father-husband were divorced. The Court's reasoning appears to be that a child, after parental rights have been voluntarily terminated via a denouncement of paternity[3] at divorce by the presumptive father, is in essence a child born out of wedlock.
We must examine, therefore, just who may bring an action to establish paternity and when such an action may be asserted. I.C. 31-6-6.1-2(a) allows only the following persons to bring an action to establish paternity:
(1) The mother or expectant mother.
(2) A man alleging that he is the child's biological father or that he is the expectant father of an unborn child.
(3) The mother and a man alleging that he is her child's biological father, or by the expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.
(4) A child.
Husband, as D.S.'s presumptive father, is legally distinguished from any man outside of the marriage who attempts to assert paternity. Interestingly, a husband who is a presumptive father under I.C. 31-6-6.1-9(a)(1) and a non-husband who is a presumptive father under subsection I.C. 31-6-6.1-9(a)(4) might be thought to have equally-weighted presumptions of paternity in their favor. However, a man under subsection (a)(4) who is not also the presumptive father under subsection (a)(1) is a "putative father" as defined by I.C. 31-3-1.5-4: a putative father is "[a] man who may be a child's father but who: (1) is not married to the child's mother on or before the date that the child is born." Thus, R.S. is a putative father while Husband is the presumptive father. And, one who is a putative father, but not a presumptive father under I.C. 31-6-6.1-9(a)(1), must comply with additional statutory requirements under I.C. 31-6-6.1-9(a)(1) before paternity may be established.[4]
*161 Most important is that a putative father may only establish paternity in a child born out of wedlock. The legislature intended for the paternity statute to be used to establish paternity rather than to defend a husband's paternity against assertions of paternity made by third parties outside the marriage. The policy statement issued in 1994 by the legislature cannot be more clear: "[t]he general assembly favors the public policy of establishing paternity under this chapter of a child born out of wedlock." I.C. 31-6-6.1-1.5 (emphasis added). It is important to note that this statute was adopted after S.R.I. Because we must assume that the legislature drafted the statute with common and statutory law in mind, we will not interpret the paternity statute in any manner other than when it is used to establish paternity of a child born out of wedlock.
For instance, the statute makes no provision for a husband to petition the court to disestablish paternity. Other than requesting a divorce court to find that a child is not a child of the marriage for purposes of arriving at an equitable support order, a husband who is also a presumptive father has no standing under the paternity statute to bring an action to establish paternity because paternity is already presumed. The policy of using the paternity statute to establish, rather than to disestablish, paternity is in the best interest of all children. For example, I.C. 31-6-6.1-9(a)(1) protects a child's interests when a father attempts to avoid parental responsibility for a child born into the marriage by divorcing the mother before or after the child is born. I.C. 31-6-6.1-9(a)(4) can reasonably be said to have been drafted also to establish, rather than disestablish, paternity. A mother may wish to create a presumption of paternity in a man with whom she has had a child out of wedlock. Or, a biological father may wish to create a presumption of fatherhood in an effort to intervene when his child, who was born out of wedlock, is in jeopardy of being adopted by someone other than himself.[5] R.S. argues that D.S. is a child born out of wedlock, regardless of Mother's marital status at the time of conception and birth. Though on its face the definition might seem obvious, we must examine what is meant by the term "child born out of wedlock." R.S. argues that D.S. is a child born out of wedlock because, although he was born into an intact marriage, he was fathered by R.S., who was not Mother's husband.[6] Because the legislature has a policy of establishing paternity, it should be implied from the presumption created by I.C. 31-6-6.1-9(a)(1) that D.S. was indeed a child born in wedlock. The question is whether that presumption may be rebutted when the marriage into which the child was born is still intact at the time a third party attempts to establish paternity.
The Court of Appeals held in R.D.S. v. S.L.S. (1980), Ind. App., 402 N.E.2d 30, that the presumption of legitimacy may be overcome by the husband at divorce. There, the husband challenged the finding by the divorce court that the child was a child of the marriage because the child was not conceived in the marriage. The majority opinion was that "a child born to a married woman but not fathered by her husband is a child born out of wedlock." Id. at 31, n. 2. In that case the husband had not even met the mother until after she was visibly pregnant. They were married three weeks before the birth of the child. Under the holding of that case, had the husband not challenged the paternity at divorce, the child would have been considered *162 a child of the marriage under such theories as equitable adoption, equitable estoppel, in loco parentis, or under a contract to support or adopt a child.[7] Moreover, the husband, as a party to the divorce proceeding, would have been subsequently barred from challenging paternity at a later time due to the principle of res judicata.
We do not agree with the Majority's position in R.D.S. v. S.L.S. that a child born to a married woman but not fathered by her husband is prima facie a child born out of wedlock. It is only when the mother or husband, at the time of divorce, or the putative father and/or child after the divorce, succeeds in overcoming the presumption of legitimacy created by the paternity statute in favor of children born during a marriage, that the child is considered to be a child born out of wedlock.
However, when a husband and mother remain married and neither seeks to allow a third party to establish a legal relationship with the child via a termination of their parental rights and adoption, regardless of actual paternity, the child is not a child born out of wedlock. Our supreme court aptly stated that "whether a cause of action like this one would be permitted while the mother's marriage is intact is not presented in this case, and we do not decide that question." S.R.I., 602 N.E.2d at 1016. For reasons to be discussed, a third party may not disrupt the integrity of an intact family to assert his paternity.[8]
The facts in S.R.I. were that a putative father brought a paternity action against the mother and presumptive father. The child was born in 1984 during their marriage and they were divorced in 1986. The child was found at divorce to have been a child of the marriage. In 1990, the putative father sought to establish paternity. The issue was whether the findings of the divorce court were res judicata as to the putative father and the child. Our supreme court held that due to several public policy reasons, the putative father was not precluded by principles of res judicata from seeking to establish paternity.[9] It was also held that a guardian ad litem must be appointed for the child in such a situation. However, the Court in S.R.I. was not faced with weighing the conflicting public policy concerns of allowing a third party to disturb the integrity of an intact marriage versus the interest of a child in correctly identifying its parents. Today we must resolve those conflicting concerns.
The public policy reasons for allowing a putative father to establish paternity with a child born into the marriage of the mother and her husband but after their divorce were discussed by our supreme court:
We agree with the Court of Appeals majority that stability and finality are significant objectives to be served when deciding the status of children of divorce. On the other hand, there is a substantial public policy in correctly identifying parents and their offspring. Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father. Fairrow v. Fairrow (1990), Ind., 559 N.E.2d 597. Conversely ... "there is a substantial public policy which favors a support order against a man who is a child's father." In re Paternity of S.R.I., Ind. App., 588 N.E.2d 1278, 1281 (Staton, J., dissenting).
*163 S.R.I., 602 N.E.2d at 1016.[10] The Court did not identify what additional interests should be considered when the child was born during the marriage of the mother and presumptive father and their marriage is intact at the time of the paternity challenge. Presumably, because support of the child is not an issue when the marriage remains intact, the reason for allowing the paternity action to proceed is not as compelling.[11]
The public policy reasons for protecting the integrity of an intact family against attacks from third parties relating to the paternity of a child born during the marriage were discussed by the United States Supreme Court in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333. The Court applied California law in that case in which the putative father asserted paternity of a child born (and conceived) during the marriage of the mother and her husband. As was the case in S.R.I. but unlike in the case at hand, blood tests conclusively established the putative father to be the child's natural father. California's statute, like Indiana's, created a rebuttable presumption that a husband is the natural father of any child born into the marriage. California's statute provided that only the mother and the husband may challenge the paternity of a child born during their marriage. The putative father challenged the statute on substantive and procedural due process grounds. He also asserted an equal protection argument on behalf of the child.
Justice Scalia weighed the interests of the putative father and child against the interests of protecting the intact family:
Thus, the legal issue in the present case reduces to whether the relationship between persons in the situation of [putative father] and [child] has been treated as a protected family unit under the historic practices of our society, or whether on any other basis it has been accorded special protection. We think it impossible to find that it has. In fact, quite to the contrary, our traditions have protected the marital family against the sort of claim [putative father] asserts.
Michael H. v. Gerald D., 491 U.S. at 122, 109 S.Ct. at 2342. Justice Scalia went on to examine the history of this policy, noting that the presumption of legitimacy was a fundamental principle of the common law. The primary policy rationale for this presumption "appears to have been an aversion to declaring children illegitimate." Id. at 124, 109 S.Ct. at 2343. When a putative father succeeds in establishing paternity of a child otherwise considered to have been a child born in wedlock, the child becomes a child born out of wedlock, thereby depriving the child of rights of inheritance and succession, not to mention attaching a social stigma upon the child which was theretofore not attached.
Indiana common law is in line with Justice Scalia's analysis of general common law. For example, in A.B. v. C.D. (1971), 150 Ind. App. 535, 277 N.E.2d 599, the mother's second husband sought to declare himself the legitimate father of a child born (and conceived) during the marriage of the mother to a previous husband. An action to declare a child legitimate differs from an action to *164 establish paternity because paternity may be established only over illegitimate (i.e., born out of wedlock) children. Paternity may not be established in a child who is presumed legitimate until the presumption of legitimacy becomes rebuttable as a result of the legal dissolution of the intact marriage into which a child was born. In A.B. v. C.D., the mother's first husband had not disavowed paternity of the child at divorce and the child was found at divorce to have been a child of the mother's first marriage. The Court held that the child could be declared legitimate only by legislative act and that the legislature had recognized no such cause of action. Thus, when petitioned to address on the merits the issue of whether a child born in wedlock can subsequently be considered a child born out of wedlock when a third party asserts paternity after divorce of the mother and her husband, common law in Indiana did not recognize such a cause of action until S.R.I. in 1992. However, we doubt the legislature intended for the courts to recognize a third party petition to establish paternity of a child born into an intact marriage when there has been no legal dissolution of the intact marriage into which the child was born.
We must look then to the facts which distinguish a child in an intact marriage from a child of divorce. The secondary policy concern echoed by Justice Scalia was the interest in promoting the "peace and tranquility of States and families." Michael H. v. Gerald D., 491 U.S. at 124, 109 S.Ct. at 2343. The Court stated:
What counts is whether the States in fact award substantive parental rights to the natural father of a child conceived within, and born into, an extant marital union that wishes to embrace the child. We are not aware of a single case, old or new, that has done so. This is not the stuff of which fundamental rights qualifying as liberty interests are made.
Id. at 491 U.S. at 125, 109 S.Ct. at 2344.
The Supreme Court of Pennsylvania, analyzing a statute which also was silent as to a third party's rights to challenge paternity of a child born into an intact marriage with no divorce, aptly framed the proper outcome of this issue:
Whatever the interests the putative father may claim, they pale in comparison to the overriding interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit. These interests are the cornerstone of the age-old presumption and remain protected by the Commonwealth today. Thus a third party who stands outside the marital relationship should not be allowed, for any purpose, to challenge the husband's claim of parentage.
John M. v. Paula T. (1990), 524 Pa. 306, 322-23, 571 A.2d 1380, 1388-89, cert. den., 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990), superseded on other grounds, 402 Pa.Super. 61, 586 A.2d 397.
These policy concerns are far too important for this Court to invent a cause of action under the paternity statute. If such cause of action is considered desirable, then the legislature is the appropriate body to design a statutory provision to properly weigh the interests at stake and adequately protect those interests. The interest of preserving the integrity of the intact marital union compels us to vacate the Agreed Entry of the parties and the judgment of the trial court and to order this case dismissed.

II
We next consider whether an Agreed Entry establishing paternity over a child born to a marriage which remains intact and entered into as a private contract between the parties is void as being against public policy. Where not prohibited outright by statute or court rule, the question of whether an agreement is void on public policy grounds is a question of law to be determined from the circumstances of the case. Straub v. B.M.T. by Todd (1994), Ind., 645 N.E.2d 597, reh. den. We note the reference by R.S. to the agreed entry of judgment as a contractual or settlement agreement. In essence, R.S. posits that the parties have the right to agree privately to such matters as paternity, absent a statutory vehicle or judicial oversight. Clearly, the Agreed Entry which established paternity of R.S. over D.S. was a private contract between the parties. Even if we do not view the Agreed Entry as *165 a private contract, parties may not agree to establish a legal cause of action when no such legal cause exists in the eyes of the court or the legislature.
Our supreme court has recognized that protecting the welfare of children is well-established public policy of utmost importance. Straub, 645 N.E.2d 597. Agreements such as the one made between R.S., Mother and Husband, have the potential to contract away the rights of children to the support of both parents of the marriage. The right to support lies exclusively with the child and neither parent has the right to contract it away. Id. Any agreement purporting to contract away rights of a child to support by either parent is directly contrary to Indiana's public policy of protecting the welfare of children inasmuch as it narrows the basis for support to one parent. Id.
Additionally, the agreement made by the parties in this dispute indicates clearly why such agreements should be disallowed. There was no provision for R.S. to pay child support, medical or educational expenses. The child was not appointed a guardian ad litem or even joined as a party to the agreement. Mother and Husband were not represented by counsel. An every-other seven day visitation schedule was arranged for the child, which in itself was found to be detrimental to the best interest of the child. Mother argues when she agreed to the arrangement that it was a highly emotional time for her and she was attempting to salvage her marriage. In such a situation, both parents' interests are frequently adverse to those of the child, thereby necessitating independent representation for the child. H.J.F., 634 N.E.2d 551. Moreover, under such circumstances the parties' bargains may range from unworkable to seriously harmful to the child. For example, preconception agreements may occur between a woman and her extramarital partner, wherein she agrees as consideration for the relationship, not to hold the man liable for any child conceived as a result of the affair, regardless of whether she and her husband divorce. Or she may promise to allow the extramarital partner access to the child which may diminish the child's otherwise harmonious relationship with the presumptive father-husband.
We must clarify, however, that when not prohibited by public policy concerns, private agreements between the parties are allowed and, in fact, encouraged. It would not violate public policy, for example, for parties after a divorce to create an Agreed Entry which establishes paternity in a third party, provided that the child's interests are represented by a guardian ad litem and all necessary parties are joined. In the present case, the agreement between R.S., Mother and Husband, whose marriage remains intact, is void as a matter of law as being against public policy.
Judgment and Agreed Entry vacated with cause dismissed.
DARDEN and NAJAM, JJ., concurring.
NOTES
[1] There are five types of statutorily-created presumptive fathers, as defined by I.C. 31-6-6.1-9, only two of which are relevant to our facts in this litigation:

(a) A man is presumed to be a child's biological father if:
(1) The man and the child's biological mother are or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, or dissolution;
* * * * * *
(4) The man undergoes a blood test that indicates with at least a ninety-nine percent (99%) probability that the man is the child's biological father.
[2] In Indiana, children now are considered necessary parties to any paternity action. Kieler v. C.A.T. ex rel. C.S.T. ex rel. Trammel (1993), Ind. App., 616 N.E.2d 34. In H.J.F., 634 N.E.2d 551, it was held that in paternity proceedings where a presumptive father's parental rights and duties are at stake, a guardian ad litem to protect the child's interests is essential. Id. at 555. Additionally, it was also held that in order to assure that the paternity judgment is res judicata as to all interested parties and in order to preserve the welfare of the child, it is required that the child be joined as a necessary party in the proceeding. Id. at 553. A presumptive father's paternity may be challenged after he divorces his wife. For the above reasons, the requirement of appointing a guardian ad litem and of joining the child as a party should be applied any time a presumptive father's paternity is challenged. Thus, even had we held today that there was a cause of action in Indiana under the facts of this case, because D.S. was not a party to the proceeding and no guardian ad litem was appointed on his behalf, the judgment of the trial court would have been void.
[3] A denouncement of paternity in a divorce action is not the same as a legal petition to establish paternity under the paternity statute. As will be discussed, the paternity statute may not be used to disestablish paternity. The common law and statutes of this State do not support disestablishment of paternity. Even in the situation of divorce, the husband is subjected to a high evidentiary standard in his attempt to escape parental responsibility for a child born during the marriage. An establishment of paternity, however, is in effect an establishment of parental rights.
[4] The record indicates that R.S. did not comply with the statute as it relates to putative fathers, nor is there any evidence of a blood test which would make him a presumptive (yet still putative) father under I.C. 31-6-6.1-9(a)(4). I.C. 31-6-6.1-2 goes on to state:

(d) This subsection does not apply to a man whose paternity is established under this chapter before the filing of a petition to adopt the man's child. A man who files or is a party to a paternity action under this chapter shall register with the putative father registry under IC 31-3-1.5 within the period under IC 31-3-1.5-12.
[5] R.S. argues that, in effect, D.S. was adopted by Husband without R.S. having had the opportunity to assert his rights under the adoption statute. However, as will be discussed in this opinion, D.S. was a child born in wedlock. As such, both parents under the adoption law must consent to the adoption of D.S. by R.S. The record indicates that neither Mother nor Husband consented to such an adoption.
[6] There is no evidence in the record, aside from the Agreed Entry, that R.S. fathered D.S. As will be discussed, such an Agreed Entry is against public policy. That the parties stated Mother had an adulterous affair with R.S. is not evidence enough to establish that R.S. fathered D.S.
[7] It is our position, in agreement with the dissent in R.D.S. v. S.L.S., that the husband should have been barred from challenging paternity at the divorce due to these theories. He held himself out as the child's father and entered into the marriage with knowledge that he was not the child's father. Moreover, there was no third party asserting paternity in the child, as was the situation in S.R.I.
[8] Because we are not presented with the issue of whether the child, at an age of competence, may seek to establish paternity in a third party, we will not address that issue. Hopefully, the legislature will clarify the child's standing to bring a paternity action at the age of competence but while the marriage of the mother and presumptive father-husband is still intact.
[9] The issue of res judicata is not before us today because Mother and Husband remain married.
[10] We held in J.E. v. N.W.S. by S.L.S. (1991), Ind. App., 582 N.E.2d 829, 832, reh. den., trans. den.:

Although securing support and education for a child born out of wedlock is the primary purpose of a paternity action, Rundel v. Shady (1986), Ind. App., 492 N.E.2d 694, the interest of a child in establishing paternity is not limited to child support. A child born out of wedlock who establishes paternity in a timely fashion has certain rights to inherit from the father, Ind. Code § 29-1-2-7(b), as well as certain rights to claim other economic benefits upon the death of the father. S.V. v. The Estate of James Bellamy (1991), Ind. App., 579 N.E.2d 144. These rights, in addition to the right to receive payment of child support, are of constitutional dimension and are entitled to protection under the equal protection clause of the United States Constitution. Mills v. Habluetzel (1982), 456 U.S. 91, 102 S.Ct. 1549 [71 L.Ed.2d 770].
[11] Because also the child may inherit from the presumptive father-husband, the issue of inheritance as justification for allowing the putative father to establish paternity is not as compelling. The United States Supreme Court applied the "rational relationship" test to the equal protection argument asserted in Michael H. v. Gerald D., 491 U.S. at 130, 109 S.Ct. at 2346. It was determined that the legitimate State end of preserving family harmony in an intact marriage may be achieved through the rational means of denying a third party or the child the opportunity to establish paternity in a man outside of the intact family.