**Livingston v. Lando**

C.P. of Allegheny County, no. FD91-9039.

*Carol A. Behers,* for plaintiff.
*Todd M. Begg,* for defendant.

BAER, *A.J.,* August 9, 1996—We write in this case to emphasize that certain decision-making aspects of parenthood do not qualify as "legal custody disputes," and therefore should not be brought before a court for adjudication. Parents must either reach agreement on such issues, or agree to disagree. If parents choose the latter, each should do what he or she believes best serves his or her child during the times such parent enjoys physical custody of the child.

Plaintiff Scott D. Livingston, "Father," and defendant Rebecca L. Lando, "Mother," were once married and are now divorced. They are the parents of two sons, Andrew, age 9, and Alex, age 7, "Children." The parents' claims for primary physical custody came to trial before the undersigned in December of 1995. After full hearing, we awarded parties shared physical custody, with

Mother generally having "school-day" custody and Father generally having "weekend" custody. While we directed that the parties share legal custody, we specifically gave Mother the right to decide where Children would attend school in September of 1996. We did this because the testimony reflected the potentiality of impasse regarding that decision, and we believed that Mother, as school-day parent, was in the best position to decide this issue. Father took an appeal from our entire custody decision. That appeal remains pending.

Father now files a petition for special relief requesting that we designate him the parent responsible for determining where Children will participate in after-school and weekend athletic activities, and where they will take CCD classes. Father also requests that we overrule Mother's decision regarding where Children should attend school next September, averring that Mother's choice was made out of malice toward Father, arising from his exercise of his appellate rights, rather than in contemplation of what is best for Children. While Father requests that we become involved in these three decisions, he requests specifically that we not consider awarding sole legal custody to either party. He avers that this is the first impasse in over five years of co-parenting, and believes that we should assist regarding these specific issues without resorting to an award of sole legal custody. Likewise, Mother has not sought sole legal custody through her answer, brief or oral argument.[1]

---

1. As set forth herein, the only issue raised that is in reality a legal custody dispute is the school choice question.

We note that no record was made in this case. Father submitted a petition, and Mother an answer. Both parties submitted briefs, and we heard oral argument. We do not believe that a record is required under these circumstances. As will be explained below, we cannot hear the issue regarding the school choice because of the pending appeal, and we believe that as a matter of law, the religious training and athletic events issues, within the circumstances of this case, are not legal custody issues.

We will deal first with Father's request that he be designated parent-in-charge of Children's after-school and weekend extra-curricular athletic schedule, and that we require that Children attend weekday CCD classes at Father's church, where Children attend Sunday religious services because Father has physical custody of them on Sundays. Underlying these issues is the question of which parent will have to drive to the other's community incident to Children's activities. While married, parties lived in Mt. Lebanon, and upon separation they both remained there. Mother has now moved with Children to Shadyside, which is about 10 congested urban miles from Father's home. Father wants control of Children's after-school activities to force Mother to drive Children to Mt. Lebanon. Father avers that he participates in these after-school activities, and it would be burdensome for him to drive to Shadyside.[2] Conversely, Mother desires control to keep Children in Shadyside, so that she can avoid this daily drive.

---

2. We note that to participate in Children's after-school activities Father presumably would be traveling not from Mt. Lebanon, but from his office in downtown Pittsburgh, which is about five heavily congested miles from Shadyside.

"Legal custody" is defined statutorily as: "The legal right to make *major decisions affecting the best interest of a minor child. . . .*" (emphasis added) 23 Pa.C.S. §5302. We believe that, absent some exigent circumstance, which was not averred in this case, neither the issue of Children's athletic or CCD schedule constitutes a "major decision affecting the best interest[s]" of Children, and thus neither is a legal custody issue properly before this court. While these matters certainly involve issues of convenience and control to the parents, they are simply not of major lasting consequence to Children, and therefore not appropriate for our adjudication.

While we are saddened that the parties have reached impasse on these types of issues, and at a humanistic level are tempted to intervene to break that impasse, in the end we would do Children more harm than good by assuming the day-to-day parenting decisions, a function we are ill-equipped to carry out, and do parents more harm than good by creating the illusion that we will always be there when they disagree. To decide otherwise is to inappropriately micromanage this family. We cannot and will not decide whether Children should take aspirin or Tylenol; wear a raincoat or a heavy coat on a chilly-drizzly day; put on no. 4 or no. 45 sunscreen on a hot day; have their hair cut by "Joe" or "Joanne," or the like. Likewise, we will not involve ourselves in whether Children should play football, platform hockey or soccer, or whether they should play any of these sports in Father's neighborhood, Mother's neighborhood, neither or both. Children will be well served by participating in any one of these or numerous other activities in either Shadyside or Mt. Lebanon.

Nor will we decide whether Children should take Catholic education in parochial school or church, or in either party's particular neighborhood. Children will be fully served regardless of whether they learn Catholic doctrine in Mother's or Father's neighborhood. We trust that the religious leaders involved in Children's training and education will talk to each other and coordinate their efforts.

As we mentioned above, what really underlies this dispute is not concern over what is best for Children, but rather concern over drive-time and the convenience of the adults. If either party could by competent evidence show that there was substantial risk of harm to Children from this situation, we would, of course, hear it. We caution, however, that such risk of harm must be established through more than pure verbiage. Otherwise, able counsel would be able to blur the distinction we are drawing between legal custody decisions and day-to-day parenting decisions, and make such distinction meaningless.

Finally, we turn to the issue of school choice, which we believe is a proper legal custody issue, and therefore, a matter appropriate for our involvement under the facts of this case.[3] As explained above, Mother and Children have moved from their former, and Father's current, community of Mt. Lebanon to Shadyside, and Children are therefore changing schools. This is a one-time major decision which without doubt will affect dramatically the best interests of Children, and therefore is appro-

3. This is consistent with the position we took during the custody hearing last December.

priate for our consideration. Accordingly, we would have scheduled a hearing on this issue if we had had jurisdiction; which we do not.

Our order of January 11, 1996, from which Father took an appeal, provided Mother with the right to make this choice. Father's statements of matters complained of on appeal specifically raised that aspect of our decision. There is no doubt that jurisdiction regarding this issue now lies in the Superior Court, and it would be a clear error of law for us to entertain it. Pa.R.A.P. no. 1701(a); *Jones v. Trojak,* 402 Pa. Super. 61, 71-72, 586 A.2d 397, 402 (1990), *affirmed,* 535 Pa. 95, 634 A.2d 201 (1993).